[Crim. No. 745.   Second Appellate District, Division One.—February 21, 1921.]

## THE PEOPLE, Respondent, v. FRED JOHNSON, Appellant.

[1] CRIMINAL LAW—RAPE—EVIDENCE—SIMILAR OFFENSES.—In a prosecution for rape, testimony of other acts and conduct than the one charged is admissible to show the disposition of the defendant as to the propensity involved.

[2] ID.—BIRTH OF CHILD—COMPETENT TESTIMONY.—In a prosecution for the crime of rape, testimony as to the birth of a child to the prosecuting witness approximately one month after the commission of the act charged was competent, where it was the consistent claim of the witness that she had had no relations with any other man than the defendant.

[3] ID. — RELATIONSHIP OF PARTIES — IMPEACHMENT OF WITNESS. — Where in such prosecution a witness for the defendant testified that he had roomed for some time in an adjoining room to that occupied by the defendant, his wife, and the prosecuting witness, and that he had never observed the prosecuting witness in the bed occupied by defendant and his wife, testimony of a witness for the prosecution to the effect that in a conversation with defendant's witness, the latter had stated to him that he had observed the prosecuting witness and defendant in the bed, was properly admissible as impeaching evidence.

[4] ID.—WORDS AND CONDUCT OF DEFENDANT—INCRIMINATING CHARACTER—QUESTION FOR JURY.—Evidence of a physician that the defendant visited the physician's office and, after learning of the pregnant condition of the prosecuting witness, made inquiry as to what disposition might be made of the girl and the child to be born, and that he also made a statement in attempted explanation of her condition, was admissible, and it was for the jury to determine whether the words or conduct were incriminating.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. J. Emmons and Walter Osborn for Appellant.

1. Other offenses as provable in prosecution for rape, notes, 8 Ann. Cas. 459; 18 Ann. Cas. 442; Ann. Cas. 1915D, 164.

U. S. Webb, Attorney-General, and J. R. Dorsey for Respondent.

JAMES, J.—Defendant was convicted of the crime of rape and sentenced to be imprisoned in the state prison. He has taken this appeal from the judgment entered against him. Conviction was had after several mistrials. In the presentation of this appeal we have not been aided by briefs, although counsel for the appellant did by oral argument point to several matters in support of the claim that error had been committed in the lower court by reason of which defendant had been deprived of his right to a fair trial. The record is quite voluminous. We have, however, made a very close examination of it in order to determine whether the contentions of appellant are of sufficient merit to warrant a reversal.

At the time the alleged offense was committed, the date being the twenty-seventh day of March, 1919, according to the charge contained in the information, the prosecutrix was a child of the age of fifteen years. She was a daughter of a sister of the wife of the defendant. She went to live in the household of the defendant about the year 1916. This household at that time consisted of the defendant and his wife, and a minor child of the two latter. The family first lived at Sawtelle; later, in the year 1918, they resided for a time in Tulare County (that being in July of the year referred to), and subsequently took up their residence in the oil fields in Kern County. It was while they were residing in the latter county that the act complained of was alleged to have been committed. So far as the particular act referred to in the information is concerned, there was no testimony concerning the happening other than that given by the child. This girl, the prosecutrix, was shown to have given birth to a child in April of 1919, approximately one month after the commission of the unlawful act charged in the information. The prosecuting attorney, commencing at a time prior to that when the defendant and his family removed to Tulare County, offered evidence which was received by the court showing a continuous course of lascivious conduct by the defendant toward the prosecutrix, and a series of illicit acts, the number or circumstances of which it is unnecessary to detail. These various acts and

51 Cal. App.—30

conduct were established by the testimony of the prosecutrix, which was, so far as we can judge from the printed page, given unhesitatingly and with considerable exactness of detail. This testimony was offered under the familiar rule which permits other acts and conduct than the one charged to be shown in a case of this nature, in order that the disposition of a defendant as to the propensity involved may be made apparent. That such testimony is highly dangerous and damaging to a defendant's case must be conceded, for the reason that a jury, in considering the tender age of such a prosecutrix, is prone, under the influence of prejudice, to allow the aggregate proof of acts other than the one charged to overcome any uncertainty that it may feel as to the sufficiency of the proof as to the particular act referred to in the information. Hence it has often been said in the decisions that trial courts cannot be too careful in cautioning juries against unwittingly allowing their personal bias and prejudice, which is naturally aroused against a defendant in the presence of such an accusation, to cause them to deviate from their sworn duty.

[1] That testimony of the kind and character to which we have referred is competent, relevant, and material for the limited purpose adverted to has long been established. (*People* v. *Koller*, 142 Cal. 621, [76 Pac. 500]; *People* v. *Slaughter*, 33 Cal. App. 365, [165 Pac. 44]; *People* v. *Elgar*, 36 Cal. App. 114, [171 Pac. 697]; *People* v. *Wademan*, 38 Cal. App. 116, [175 Pac. 791].)

[2] So, also, was the testimony as to the birth of the child competent to be introduced before the jury, where it was the consistent claim of the prosecutrix that she had had no relations with any other man. Her credibility was, of course, a matter which the jury had the right to determine, in view of all the circumstances of the case. There was, in addition to the evidence which is particularly referred to herein, testimony of the marked familiarity in the demeanor and conduct of appellant toward the prosecutrix, which was observable in the daily life of the household. It may be remarked further that the young girl seems to have been influenced throughout the course of the whole sordid relationship by a feeling of reciprocal regard for the man. A part of the evidence was, in substance, that during the residence of defendant and his family in Kern County the wife would

arise early in the morning, in order to do the cooking for the family and several boarders, and that the husband would remain in bed; that the young girl frequently slept in the same bed with the husband and wife, and that after the wife had left the room in the morning, many of the acts referred to had been committed. ᐧ This evidence, as we have before stated, came from the lips of the prosecutrix. The wife of the defendant denied many of the things which the young girl had testified about, and made statements which, if true, showed a condition of affairs where it would have been impossible for the things which the young girl charged to have actually occurred. This situation again presented a question for the jury upon which its decision is final as to the facts.

[3] One person, a witness, Thompson, testifying for defendant, testified that he had roomed for some time in an adjoining room to that occupied by the defendant, his wife, and the prosecutrix; that he had opportunity to observe the conditions referred to and to hear even small noises which might have proceeded from that room, and that he had never observed the young girl in the bed occupied by Johnson and his wife. By way of impeachment, and after laying a sufficient foundation, the district attorney produced a witness who testified to a conversation had with Thompson, wherein Thompson had stated that he had observed the young girl in the bed with defendant and proceeded to give some additional details in connection therewith. We think, notwithstanding the contention of appellant to the contrary, that the testimony was properly admitted as impeaching evidence. The court was careful to caution the jury as to the purpose of the impeaching testimony and as to the limited use which they might make of it in the consideration of the case.

Another point urged by appellant is that the court improperly allowed the district attorney to read in evidence the testimony of a physician given at a former trial. The objection urged to this testimony is twofold; first, that it was not sufficiently shown that the physician was beyond the reach of a subpoena, and, secondly, that the evidence was, in part at least, incompetent and prejudicial. We are unable to conclude that the testimony was read without a sufficient showing as to the absence of the witness. On the

contrary, we think the district attorney made a very complete showing upon which to base his offer. He showed that he had issued subpoenas to practically every sheriff in the state, many of which had been returned, and that on the day or the day preceding the trial, a further search had been made in the immediate locality of the county seat of Kern County, and that this search was unavailing and that the witness was not to be found. In addition to this there was the testimony of one of the judges who had presided in a former trial of the case, and other witnesses, that the physician had at the prior trial stated it as being his intention to leave the state of California soon for the purpose of pursuing a course of study in an eastern college. [4] The particular portion of the testimony to which the further objection is urged that it was incompetent was that defendant had visited the physician in company with his wife, and after he had learned of the then pregnant condition of the prosecutrix had inquired of the physician what disposition might be made of the girl and also of the child to be born; also the further statement, in attempted explanation of the condition of the girl, that at one time he had left the girl at home in company with a man who was at that time stopping there and that the act must have occurred at that time. It was for the jury to say as to whether the words or conduct of the defendant, as heard and observed by the physician, were incriminating. If they in fact amounted to an admission, or if they appear sufficient to warrant the belief that the defendant was endeavoring only to cover up his own crime, they were competent. If the jury did not so view them, then proof of the same was without prejudice.

There was some evidence to the point, and in fact it was admitted by the prosecutrix, that upon its being learned that she was in a pregnant condition the prosecutrix at first denied that Johnson was the cause of that condition. In explanation of those assertions, however, she told the jury that Johnson had advised her to make no admissions involving him in the matter, as it would make trouble for herself and he would have to go to jail. Following the making of this admission the defense sought to show that another man working about the oil wells had paid close attention to the child and had desired to marry

her. This testimony was furnished by the immediate family of the defendant. It fell short, however, of showing that illicit relations had ever occurred between the child and the "other man." It is quite apparent that all of these matters involved in this feature of the defense presented questions as to which the decision of the jury was final. To be sure, the case was one which warranted and called for the closest scrutiny on the part of the jury in determining the credulity of the witnesses and particularly that of the prosecutrix. The case in its main feature is not at all unlike that considered in *People* v. *Wademan, supra.* Many of the questions herein adverted to were there presented and determined adversely to the contention of that defendant.

We have considered carefully the charge as given by the court to the jury and find that it sufficiently guarded all of the defendant's rights. All of the particular questions touching the purposes for which the special evidence was introduced in support of the main charge were carefully covered by the instructions of the court. We find no error sufficient to justify the claim of the defendant that the judgment should be reversed and that he should have a new trial.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.