[Crim. No. 1208.   Second Appellate District, Division One.—May 12, 1925.]

THE PEOPLE, Respondent, v. ELMER SYLVIS, Appellant.

[1] CRIMINAL LAW—RAPE—EVIDENCE—VERDICT.—In this prosecution for rape, while the defendant denied the charges *in toto,* and went so far as to assert that he had never seen the prosecutrix until she appeared in the county jail where he was incarcerated to identify

him, there was abundant evidence in the case to support the verdict of guilty.

[2] Id.—Corroboration of Prosecutrix.—In such a prosecution, the defendant may be convicted upon the uncorroborated testimony of the prosecutrix, if the jury believes her story.

[3] Id.—Robbery—Evidence—Absence of Taking from Person.—In a prosecution for robbery, the evidence is insufficient to sustain a verdict of guilty, where the essential elements of the crime—that is, the taking of the property from the person or his immediate presence—are wholly lacking.     .

---

(1) 33 Cyc., p. 1486, n. 12.   (2) 33 Cyc., p. 1496, n. 82.   (3) 34 Cyc., p. 1798, n. 19, p. 1808, n. 78.     .

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank C. Collier, Judge.   Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Charles R. Morfoot for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, and John L. Flynn, Deputy Attorney-Generals, for Respondent.     .

HAHN, J., *pro tem.*—The defendant in this case was charged by information No. 23725 with the crime of assault with intent to commit rape in count one, and in count two, with the crime of robbery. He was also charged in information No. 23751 with the crime of rape. Both informations having been issued by the district attorney of Los Angeles County,. were consolidated and the defendant tried upon all of the charges at the same time.

The jury found the defendant guilty of rape, as charged in information No. 23751, and also guilty of robbery as charged in count two of information No. 23725, and not guilty as to the charge of assault with intent to commit rape, as set forth in count one of information No. 23725.

---

2. Necessity and sufficiency of corroboration of prosecutrix in rape, notes, 6 Ann. Cas. 771; 17 Ann. Cas. 413; Ann. Cas. 1913D, 660. See, also, 22 R. C. L. 1223; 22 Cal. Jur. 399.

Defendant prosecutes this appeal from the judgment of the court and from the order denying his motion for a new trial on the two counts upon which he was found guilty.

It is urged on defendant's behalf that the evidence was not sufficient to support the verdict finding the defendant guilty of the crime of rape as charged in information No. 23751.

From the testimony of the prosecutrix, Lulu Fuller, it appears that she, a woman of about forty years of age, on her way to attend a moving-picture theater, was waiting for a street-car on Whittier Boulevard at about 7:30 o'clock on the evening of October 2, 1924. The defendant, driving a Chevrolet touring car, stopped and invited her to ride, he indicating that he was driving in the direction of the theater where she desired to go. The prosecutrix accepted the invitation and, after riding several blocks with the defendant, he turned his automobile in a direction different from that which would have taken her to the point she desired. She at once protested to the defendant that she did not desire to ride farther and, opening the door of the car, attempted to alight. The defendant restrained her by taking hold of her and putting his arms about her and one of his hands over her mouth to prevent her from calling for help. She testified that she was very much frightened and that she fought the defendant as vigorously as her strength permitted her to do, until she was entirely overcome. The defendant then drove his car out near a cemetery, where he stopped the car, and by physical force dragged and carried her from the front to the rear seat of the car, and there accomplished the act of sexual intercourse. Thereupon the defendant drove back to the main highway and let the prosecutrix out of the car. The prosecutrix was in a nervous and dazed condition, but finally wended her way to a moving-picture theater, and a few minutes after entering, noticing a friend of hers, one Mrs. Brinegar, she went over to the friend and related to her the incident of the attack by the defendant.

Mrs. Brinegar, testifying on behalf of the People, stated that about 8:30 o'clock on the evening of October 2d, while sitting in a moving-picture theater on Whittier Boulevard, she saw Mrs. Fuller, the prosecutrix, enter; that a few minutes later Mrs. Fuller came to the witness and, taking a

seat alongside of her, related the circumstances of the attack; that the prosecutrix at that time was trembling and crying, and her clothes were dusty on one side; that the witness suggested that she take Mrs. Fuller to her home, but Mrs. Fuller protested that she wished to go to her own home, which she subsequently did.

It appears from the evidence that the prosecutrix, upon arriving home that evening, did not relate the incident of the attack to her husband, giving as a reason for her silence the fact that her husband was not well and that for some time it had been necessary for the members of the family to withhold from him any circumstances that would tend to cause him worry. It does appear that the prosecutrix, upon the first opportunity, related the circumstances of the attack to her daughter.

The prosecutrix further testified that on the morning of October 13th, following the date of the attack, while on her way to visit a friend, she saw the defendant with a companion in the same Chevrolet touring car; and that again in the afternoon of the same day, while she, the prosecutrix, was accompanied by her daughter and a Mrs. Hayden, the defendant and his companion were observed in the Chevrolet touring car. On this occasion she was able to secure the license number of the car, which she immediately reported to the officers and upon which information the officers made the arrest of the defendant and his companion, one Joseph F. Welch.

Joseph F. Welch, as a witness on behalf of the People, testified that on the morning of October 13th, while riding in the Chevrolet car, the defendant pointed out the prosecutrix, who was then walking along the sidewalk, and said: "I took her on the other night; I made a date with her the night I had her out." Welch further testified that on the afternoon of the same day, while riding in the same machine, the defendant pointed out Mrs. Fuller, who was in an automobile with two other women, and said: " 'There is that broad that I showed you this morning.' . . . I said to Elmer, 'It looks like she was taking your number down'; he says, 'Yes,' I don't know—he said something about, 'That is hell,' he says, or something, 'I am going to get out of here.' "

[1]  While it is true that the defendant denied the charges *in toto,* and went so far as to assert that he had never seen the prosecutrix, Mrs. Fuller, until she appeared in the county jail where he was incarcerated to identify him, there is no question but that there is abundant evidence in the case to support the verdict of the jury.

[2]  Counsel for the defendant urges that because there was no corroborating testimony as to the actual assault, there was insufficient evidence to support the verdict.  The rule is well settled that one may be convicted of rape upon the uncorroborated testimony of the prosecutrix, if the jury believes her story.  (*People* v. *Mayes,* 66 Cal. 597 [56 Am. Rep. 126, 6 Pac. 691]; *People* v. *Logan,* 123 Cal. 414 [56 Pac. 56]; *People* v. *Benc,* 130 Cal. 159 [62 Pac. 404]; *People* v. *Preston,* 19 Cal. App. 675 [127 Pac. 660]; *People* v. *Bernon,* 29 Cal. App. 424 [155 Pac. 1021]; *People* v. *Akey,* 163 Cal. 54 [124 Pac. 718].)

We have taken the pains to read with care the entire transcript of the testimony.  The impression of the testimony of the prosecutrix carries a note of sincerity, and we feel that her recital of the attack could reasonably have had no other result than to convince the jury of its truthfulness.

[3]  Coming now to the charge of robbery in information No. 23725: The following detailed statement of the evidence includes what is material in the consideration of this point: The complaining witness, one Mrs. Lillian Bourlis, a young married woman under the age of eighteen years, on the morning of October 14, 1924, while walking along Pasadena Avenue, in Belvedere Gardens, on her way to work, was accosted by the defendant and his companion, Joseph F. Welch, who was riding in a Chevrolet touring car, and invited to ride with them.  Being advised that they were going in the direction of her place of employment, she accepted the invitation and sat in the front seat between the defendant and his companion.  After proceeding a few blocks the defendant, who was driving the car, turned into a side road which was unpaved and little frequented, and which led to a sparsely settled locality along the railroad track.  The complaining witness asked the reason for taking this direction, which was not the direction in which she desired to go, and the defendant replied that it was a short

cut to the point of their destination. When the car arrived at a point where there were some trees along this unfrequented road, the defendant stopped the car and put his arm around the complaining witness and attempted to engage in familiarities with her. She promptly resented this conduct and resisted the defendant's efforts, even to the extent of scratching his face and striking him. It seems that the defendant then desisted and drove his car a short distance further along this unfrequented road and, again stopping the car, renewed his attempts to caress and fondle the complaining witness. Again the complaining witness vigorously resisted the defendant's attempts, and in the melee Welch opened the front door of the car and got out. As soon as the complaining witness could free herself from the defendant she too jumped out. In getting out of the car she either stumbled or fell, so that she lost her balance and was assisted to her feet by Welch. About the time she alighted from the car she noticed a man, by name of Chadwick, working near by, and she called to him for help. Her cries for help alarmed the defendant and his companion, who immediately got into the car and left the complaining witness. The man Chadwick came to her assistance, and to him she related the attacks of the defendant.

The complaining witness stated that when she got into the automobile she had her hat, coat, and a handbag, in which she carried a purse containing about ten dollars in change. After she got out of the automobile and the defendant and his companion had left, she, aided by Chadwick, looked about for her hat, coat, and bag. She found her hat at one point on the ground and her coat on the ground some distance from the hat; but the purse she was unable to find, although she searched carefully, and a second time went back to the point where she left the car, looking for her purse. There is no testimony in the record that explains how the hat and coat reached the points on the ground where they were found; nor does the complaining witness have any recollection of seeing either the defendant or his companion take her purse or bag; nor does she remember where she last saw her purse and bag, except that she had them with her when she got into the automobile.

The only other testimony in the record pointing to the defendant having anything to do with the purse comes from Welch, the codefendant of Sylvis and who was with Sylvis in the car. On this point Welch testified that he and Sylvis had gotten into the car and started away, leaving the complaining witness; that defendant Sylvis all of a sudden looked back and says: "Gee, there is her pocketbook there; get out and see what is in it. So I goes out and says, 'God, that girl won't have car-fare; what are you going to do, leave her out there?' He says, 'Hell, do you think I am a damn fool to go back there?' So I opens up the pocketbook and it was heavy, like it had a lot of loose change; it was a beaded bag; so I shoved my hand in it and I thought I never would get through counting it, there was about a handful of dimes and nickels in there; if I am not mistaken it was pretty near all dimes. So I says, 'What do you want to do with this?' He says, 'Hell, it just comes in handy'; he says, 'I am pretty short of some money that my dad has'; he says, 'You say there is ten dollars there?' He thought I was kidding him; so I takes the whole thing and shoved it in my pocket; so when we got to going along I said, 'Gee, this is not a bad pocketbook; I think I will keep it myself'; he says, 'Hell, no, you don't want to be caught with that; throw it out some place there, out in the bushes'; so the first clump of bushes we come to I tossed it out." Welch further testified that subsequently he turned over the money to Sylvis, but received back from Sylvis one dollar of the amount.

It appears from the testimony that the complaining witness, at the time she missed her pocketbook, was under the impression that in some manner it had been dropped or dragged out of the car with her hat and coat. She at no point indicated that she even entertained the thought that the defendant had taken her pocketbook. The only evidence that the defendant had anything to do with the pocketbook comes from Welch; and but one construction can be placed upon his testimony, and that is that the pocketbook was found on the ground after they had left the complaining witness. In fact, at another point in the testimony, Welch states that it was after they had gone two or three blocks from where the complaining witness was that they found the pocketbook. It does appear that the

complaining witness, in response to a question from the district attorney, who asked her if it was not a fact that she failed to stop to get her purse because she was frightened, replied in the affirmative; but a full reading of her testimony clearly indicates that she made a very careful search for her purse, and that she was not deterred in any way from this search by a feeling of fear.

Section 211 of the Penal Code, defining robbery, reads as follows: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

A most careful consideration of the testimony on this point discloses the fact that the essential elements of robbery,—that is, the taking of the property from the person or his immediate presence,—are wholly lacking. Both the defendant and his companion Welch were clearly guilty of petty larceny, but not of robbery.

The judgment and order in case No. 23751 are affirmed, and the judgment and order in case No. 23725 are reversed.

Conrey, P. J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 9, 1925.