[Crim. No. 1258. Second Appellate District, Division Two.—January 4, 1926.]

THE PEOPLE, Respondent, v. WILLIAM J. JONES, Appellant.

[1] CRIMINAL LAW—RAPE—VERDICT—EVIDENCE.—In this prosecution for rape upon a girl fifteen years old, the contention that the verdict of the jury finding defendant guilty was a result of passion and prejudice cannot be sustained.

[2] ID.—UNCORROBORATED TESTIMONY OF PROSECUTRIX—CONVICTION FOR RAPE.—One may be convicted of rape upon the uncorroborated testimony of the prosecutrix, if the jury believes her story.

[3] ID.—OTHER ACTS—EVIDENCE.—In such prosecution, the trial court did not err in permitting the complainant to testify as to alleged other lascivious conduct of the defendant toward her during preceding years, and to an alleged act of "intercourse" which she said occurred at a time prior to the commission of the act charged in the information.

[4] ID. — COLLATERAL MATTER — IMPEACHMENT — EVIDENCE. — In such prosecution, the point that the trial court erred in permitting the prosecution to impeach the complainant's mother upon a collateral matter is without merit, where the questions of the district attorney to the mother concerning an alleged quarrel between herself and the prosecutrix wherein it had been testified that the mother attempted to persuade her daughter to drop the charges against the defendant, were all answered in the negative, the mother positively stating that no such conversation occurred, and when the prosecutrix was asked what the conversation was, objection was interposed and sustained, and no objection appears to have been made to any other of the questions propounded to either witness in regard to this subject.

[5] ID.—CREDIBILITY OF PROSECUTRIX—COMPLAINT—PRESUMPTIONS—IN-STRUCTIONS.—In such prosecution, the trial court did not err in refusing to charge the jury that in determining the credibility of the prosecutrix they might consider the law as *requiring* that she make complaint as closely upon the occurrence as to be practically the first opportunity available to tell one in whom she had confidence; and that it would be presumed that an innocent woman would complain at the earliest practicable moment.

[6] ID.—ABSENCE OF OUTCRY—CONCEALMENT—EVIDENCE.—The fact that the prosecutrix, a female under sixteen years of age, made no out-

2. See 22 Cal. Jur. 399; 22 R. C. L. 1222.
3. See 22 Cal. Jur. 390; 22 R. C. L. 1204.
6. See 22 Cal. Jur. 363.

cry but concealed from others knowledge of the act was not material to the inquiry, provided the jury upon sufficient evidence was satisfied that defendant was guilty of the act as charged.

[7] ID.—VERDICT—PUNISHMENT.—In such prosecution, where the jury was furnished with a form of verdict applicable to each possible offense, and they returned their verdict upon the guilty of rape form, in the following language: "We the jury in the above entitled action find the defendant . . . guilty as charged in the information, with a recommendation for mercy," and the court thereupon reminded them that they had been instructed that in such a case they should in the event of conviction state in their verdict whether the punishment should be confinement in the penitentiary, or in the county jail, and then asked them to go back to the jury-room to complete their verdict, and shortly thereafter the jury returned into court with the same or a similar verdict, bearing the insertion, "States Prison punishment," and adding to the statement "with a recommendation for mercy," "meaning leniency," the contention that the first verdict indicated the intention that the punishment should consist of a county jail sentence only cannot be sustained.

[8] ID.—COMPLAINT BY PROSECUTRIX—TIME—INSTRUCTIONS.—In such prosecution, a requested instruction to the effect that in determining the credibility of the prosecutrix the jury should consider that the law required her to make complaint at the first opportunity after the occurrence was properly refused.

[9] ID.—DISPROVING CHARGE—INSTRUCTIONS.—In such prosecution, the error in not giving a requested instruction to the effect that the jury should keep in mind the fact that a charge of this nature is particularly difficult to disprove, though easily made, and that they should be satisfied to a moral certainty and beyond a reasonable doubt that the case was completely made out before they could render a verdict of conviction, was not assignable, where other instructions fully covered the subjects mentioned, and, though not couched in the same language, were sufficient.

[10] ID.—DATE OF ACT CHARGED—INSTRUCTIONS.—In such prosecution, an instruction that the date alleged in the information upon which the offense charged was alleged to have been committed was immaterial; that any date on or about the date specified in the information, prior to filing the information was sufficient, and that the date need not be specifically proven, was not erroneous.

[11] ID.—CONSENT—MANNER OF COMMISSION OF ACT—EVIDENCE.—In such prosecution, the ruling of the trial court in sustaining objections to the cross-examination of the prosecutrix as to whether she consented to the act of sexual intercourse or whether it was committed by fear or force, and against her will, was erroneous;

8.  See 22 Cal. Jur. 363.

but such ruling did not carry with it any prejudicial effect for the reason that the prosecutrix practically admitted throughout her examination that no force or threats were employed by the defendant. (Opinion of supreme court, on denial of hearing.)

(1) 17 C. J., p. 256, n. 67; 33 Cyc., p. 1486, n. 12.   (2) 16 C. J., p. 930, n. 93, p. 931, n. 95, 96, 2, 5; 33 Cyc., p. 1496, n. 85, p. 1501, n. 11.   (3) 16 C. J., p. 609, n. 99; 33 Cyc., p. 1424, n. 71, p. 1483, n. 95; 40 Cyc., p. 2493, n. 37.   (4) 17 C. J., p. 315, n. 84.   (5) 33 Cyc., p. 1513, n. 69.   (6) 33 Cyc., p. 1490, n. 43.   (7) 16 C. J., p. 1111, n. 88, p. 1114, n. 42, 43.   (8) 33 Cyc., p. 1513, n. 69.   (9) 16 C. J., p. 1063, n. 85.   (10) 31 C. J., p. 841, n. 4.   (11) 17 C. J., p. 313, n. 57; 33 Cyc., p. 1462, n. 53.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying new trial. William H. Ellis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas C. Whitlock for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

CRAIG, J.—The appellant in this case was charged by information with having committed rape upon a girl fifteen years old, at Banning, in Riverside County, whom the evidence disclosed to have been his own stepdaughter. A jury found him guilty, a motion for new trial was presented, and overruled, and he appeals from the judgment and ruling upon said motion.

[1] One of the principal grounds of this appeal consists of a description in minute detail of lascivious practices of appellant against the person of the prosecutrix, a mere child, testified to by her and supported by other evidence, as having commenced at Wardner, Idaho, when she was but ten years of age, continuing thence to Portland, Oregon, and terminating in statutory rape at Banning, from all of which it is argued that the verdict of the jury was a result of passion and prejudice. It is but natural that jurors, as well as appellant, should be struck with the heinous character of such an offense, when it has been shown that his corrupt approaches toward one with whose protection

he was charged had extended over a period of some five years, but we fail to find anything in the record to justify the assumption that the jury in any way deviated from a dispassionate, fair, and deliberate consideration of the case.

It appeared by the testimony of the prosecutrix that she lived with her parents and a younger sister in the state of Idaho, where her father died when she was about seven years of age; that at or about that time the defendant became acquainted with her family; that when she was about ten years old her mother removed to Oregon with the two daughters, and that the defendant followed them. The mother of the prosecutrix conducted a small boarding-house, and appellant took meals with her, and in Oregon resided in the same house at least a portion of the time. In the late fall or winter of 1922 Jones went to Banning, California, where he bought a restaurant, and in response to his entreaties the mother and two daughters joined him there on April 9, 1923, whereupon appellant and the woman immediately intermarried. He and his wife continued the restaurant business and were assisted by the prosecutrix before and after school hours, and all three would return home together at night.

The prosecutrix testified that during the time that they lived in Idaho the defendant commenced to show undue affection toward her, that he would fondle her, kiss her, raise her garments and resort to indecent familiarities with her person; that he continued to assert his passionate advances toward her in Oregon, and in the restaurant and elsewhere at Banning, "whenever he could get a chance." She also testified that during all this period of time, if she attempted to remonstrate with appellant, he would tell her that there was "nothing wrong in it," and to "keep quiet"; that upon one occasion when she threatened to inform the officers, appellant "replied that if I did he would knock my head off," and that at that time "he was getting a drink, and he took the water and threw it all at me." She swore that she spoke to her mother of appellant's indecent attention, but that her mother ignored her; that she ventured on several occasions to "hint" about it, but that her mother "turned her down completely," and conducted herself as though nothing had happened.

The direct testimony of the prosecutrix was that on or about the 5th of May, 1924, at 6:30 or 7 o'clock in the evening, she returned home from her duties at the restaurant with her mother and stepfather, and at once undressed and went to bed; that she lay there studying her lessons, and her mother sat in an adjoining room, talking with a Mrs. Samuels, the wife of a deputy sheriff, who occupied a part of the same house. It was admitted that appellant's bedroom and that of the prosecutrix each communicated with a common bathroom which latter room had a door on either side; and the prosecutrix testified that shortly after she had retired she heard the defendant enter his room, that he passed through the bathroom into her room, and sat down on her bed; that she consulted him about a problem which she was studying, but that he asked her to lay it down, that he did not know anything about it; and, to use her language, "then he threw the covers back and just picked up my gown and just got under the covers with me and had sexual intercourse with me."

Counsel for appellant have quite fully and accurately stated the facts as they appear in the record, but, rather than concurring in their assertion that the complainant's story was inherently so improbable and devoid of corroboration that the jury could not have voted for conviction except through bias and prejudice, we are impelled to the conclusion that an acquittal would have constituted a serious miscarriage of justice. It is true that no eye-witness corroborated the prosecutrix's statement as to the specific act with which appellant was charged, but ocular proof of the truth or falsity of testimony as to secret acts occurring between two persons of opposite sexes is seldom if ever available. [2] "It is well settled that one may be convicted of rape upon the uncorroborated testimony of the prosecutrix, if the jury believes her story. *People* v. *Mayes,* 66 Cal. 597 [56 Am. Rep. 126, 6 Pac. 691]; *People* v. *Logan,* 123 Cal. 414 [56 Pac. 56]; *People* v. *Benc,* 130 Cal. 159 [62 Pac. 404]; *People* v. *Preston,* 19 Cal. App. 675 [127 Pac. 660]; *People* v. *Bernon,* 29 Cal. App. 424 [155 Pac. 1021]; *People* v. *Akey,* 163 Cal. 54 [124 Pac. 718]." (*People* v. *Sylvis,* 72 Cal. App. 632 [237 Pac. 802].) And, in view of the vast difference in the ages of the parties here concerned, the apparent domination by one over the

other, the nature of the relation, admonitions of the step-father that if complainant told he would "knock her head off," and the persistent disregard by her mother of reported acts which tended to contribute to her delinquency, it is not surprising that the testimony of a third person was unobtainable. The prosecutrix was as effectively sworn to secrecy as suggestion and threats could render the most truthful witness of her years, until finally her advancing age and wisdom prevailed upon her to rebel. She told the court and jury that the crime was committed as charged in the information, and the defendant unqualifiedly denied each of her incriminating statements. As to the latter's guilt a conflict then arose, and it lay within the exclusive province of the jury to determine from the testimony and from other evidence—such as the appearance and demeanor of the witnesses, the fact that the prosecutrix withstood searching cross-examination and recross-examination, without faltering or contradiction as to essentials, that her mother's testimony was conflicting in itself, and was noticeably partial to the defendant, and that the latter departed from home following the alleged offense, and was located and arrested at San Diego—as to the credibility of each witness. This they did, and it is not for an appellate court to say as a matter of law from the sordid state of mind and conduct exhibited by the defendant that the jury could not fairly have decided that he was guilty. Citation for such a conclusion is unnecessary.

[3] It is next contended that the trial court erred in permitting the complainant to testify as to alleged other lascivious conduct of the defendant toward her during preceding years, and to an alleged act of "intercourse" which she said occurred in the year 1923. It is argued that such evidence was so "palpably false," and so prejudicial, that its admission was allowed in contravention of established rules of evidence, and that the judgment must for that reason be reversed.

The argument for appellant is in part predicated upon a question of the district attorney which, at most, was indefinite. The prosecutrix was asked: "Q. During the time that you were in Banning, California, that is from April 9, 1923, to on or about May 5, 1924, did an act of intercourse occur between you and Mr. Jones at any time prior to on

or about May 5th, 1924?'' After objection by the defendant's counsel that no proper foundation had been laid, that the question was incompetent, improper, and immaterial, inadmissible until the parties should be shown to have lived in continuous and uninterrupted illicit relationship, that no time had been fixed, and that it did not appear whether the alleged act was near or remote—which objection was overruled, the witness answered, ''Yes, sir.'' It is insisted that the objection was well taken, and that at all events there was no proof either by the answer or by other evidence in the record that a previous act of *sexual* intercourse was committed. But whether the act to which she testified was that of the most serious character contemplated by the statute, or merely one of a series of indecent familiarities to which the complainant had already testified, as having continued for about five years, is of small consequence. The evidence was clearly admissible, whether the witness intended by her answer to infer one or the other. As was said in *People* v. *Koller,* 142 Cal. 621 [76 Pac. 500] : ''It is now the settled rule in this state that evidence of prior acts of incestuous intercourse are admissible. (*People* v. *Stratton,* 141 Cal. 604 [75 Pac. 166].) And while we recognize that there is a conflict in the authorities as to the admissibility of evidence of subsequent acts, we are of the opinion that the better rule, and the one sanctioned by the weight of authority, is, that acts of improper familiarity, or illicit intimacy, or relations between the parties, subsequent as well as prior to the act charged in the information relied on by the prosecution for a conviction, are admissible as corroborative evidence, where they tend to show a continuous, illicit relationship. They are never admissible as independent substantive offenses, upon any of which a conviction can be had, and evidence of them is only admissible after the prosecution has selected some particular act of a date certain, and has elected to rely on proof of such act for a conviction of the defendant, and has introduced evidence tending to support the selection.''

In *People* v. *Wademan,* 38 Cal. App. 116 [175 Pac. 791], the same question arose, wherein it was said: ''The view of the question taken by the learned trial judge was that it being conceded that prior and subsequent acts of sexual

intercourse were admissible as showing an adulterous disposition, any lascivious or other acts of familiarity tending to awaken or promote sexual desires were alike admissible. Logically, this seems to be sound reasoning.''

To the same effect are *People* v. *Johnson*, 51 Cal. App. 464 [197 Pac. 135]; *People* v. *Slaughter*, 33 Cal. App. 365 [165 Pac. 44]; *People* v. *Elgar*, 36 Cal. App. 114 [171 Pac. 697]; *People* v. *McDonald*, 167 Cal. 545 [140 Pac. 256].

The complainant had previously testified in detail to the commission of the act charged in the information, as we have heretofore related, and it is therefore obvious that the evidence here complained of was properly admitted.

Another contention of appellant is that the cross-examination of the prosecutrix was erroneously restricted, and that he was not allowed that wide latitude of interrogation compatible with our technical rules of evidence to which a defendant is entitled in cases of this nature. *People* v. *Baldwin*, 117 Cal. 244 [49 Pac. 186], and other authorities are cited which hold that he should be given such latitude, but none of them go to the extent of holding that the cross-examination in a statutory rape case may extend indefinitely into the field of incompetent, immaterial or collateral matters. Counsel for appellant subjected the prosecutrix to a most searching cross-examination upon all questions relating to her past life, including her education, her work and family conditions, as related by her direct testimony and that of other witnesses. Counsel questioned her as to whether she worked at the cannery with or without her mother's consent, and as to where her mother was then working, whereupon the question was asked her: ''Q. (By Mr. Whitlock): I will ask you a question, and I will apologize for asking it, but my duties as counsel compel me to. I will ask you if the act that you complained of, was committed by your consent, or was it committed by force and against your will?''

Objection of the district attorney upon the ground that the question was improper under the law, was sustained, and the following question was asked: ''Q. (By Mr. Whitlock): I will ask you this question: Did you, at the time of the act complained of, protest in a mad voice against it?''

Objection was also sustained to this latter question,

whereupon appellant's counsel and the court made the following statements:

"Mr. Whitlock: As I understand the law, your Honor, we are given the privilege of showing the circumstances under which the act complained of took place, inasmuch as the law as I understand it, says that is the only defense open to us.

"The Court: In law, she need not have cried out. She need not have consented; and if she did consent, the law says it was still unlawful."

Nothing further appears to have been said upon the subject, and the cross-examination immediately turned to another subject. The ruling of the trial court was clearly proper under the statutes and the decisions of this state. In *People* v. *Roach*, 129 Cal. 33 [61 Pac. 574], it was held that in a case of this character, "neither the element of force nor the question of consent has any application. The prosecutrix could not consent and the law resists for her. (*People* v. *Verdegreen*, 106 Cal. 211 [46 Am. St. Rep. 234, 34 Pac. 607].) We must judge of the defendant's intent by his conduct and not by that of his victim." To the same effect are *People* v. *Martinez*, 59 Cal. App. 121 [210 Pac. 61]; *People* v. *Pribnow*, 61 Cal. App. 252 [214 Pac. 475].

It is here contended that inasmuch as complainant's mother and another person were in an adjoining room, an outcry could easily have been heard by them, and that the questions were asked for the purpose of impeachment. From what we have already observed it is apparent that the prosecutrix was so dominated by the defendant and treated by her mother with complete abandon that she knew that any complaint she might make would be both hazardous and futile. At all events, upon the record before us we cannot say that the rulings were erroneous.

[4] Again, it is insisted that the trial court erred in permitting the prosecution to impeach the witness Elizabeth Jones, complainant's mother, upon a collateral matter. The questions of the district attorney to said witness concerning an alleged quarrel between herself and the prosecutrix wherein it had been testified that the mother attempted to persuade her daughter to drop the charges against the defendant were all answered in the negative, the

witness positively stating that no such conversation occurred. When the prosecutrix was asked what the conversation was, objection was interposed, and it was sustained. No objection appears to have been made to any other of the questions propounded to either witness in regard to this subject and the point is therefore without merit.

[5] It is further contended that the trial court erred in refusing to charge the jury that in determining the credibility of the prosecutrix they might consider the law as *requiring* that she make complaint as closely upon the occurrence as to be practically the first opportunity available to tell one in whom she had confidence; and that it would be presumed that an innocent woman would complain at the earliest practicable moment. It is well to note in addition to what we have already said concerning the relations between the complainant and her mother, in whom counsel would infer that she had confidence, that the following testimony was given by her during redirect examination: "Q. On how many occasions could you say that you tried to talk to your mother? A. There was numerous times, but I could not tell you how many times there were, but she never seemed to think anything about it, nor tried to get what I was hinting at at all."

Complaint having repeatedly been made that the court below erred in failing to assume, or to ask the jury to assume, that the prosecutrix entertained an abiding faith and confidence in her mother, we are constrained to remark that from all the facts presented, appellant and his wife were devoid of any proper sense of responsibility to their ward, and that it would be presuming upon the intelligence of the court and jury to expect them to believe the mother entitled to confidence. Furthermore, the requested instruction was the antithesis of the law of the case. [6] "The fact that she, a female under sixteen years of age, made no outcry but concealed from others knowledge of the act was not material to the inquiry, provided the jury upon sufficient evidence was satisfied that he was guilty of the act as charged." (*People* v. *Martinez,* 59 Cal. App. 121 [210 Pac. 61].) The rule was also announced in *People* v. *Jacobs,* 16 Cal. App. 478 [117 Pac. 615]; *People* v. *Fraysier,* 36 Cal. App. 579 [172 Pac. 1126].

[7] The jury were fully instructed upon all the elements of the offense charged, and that they should find the defendant guilty of rape, as charged in the information, guilty of assault with intent to commit rape, guilty of simple assault, or not guilty. A form of verdict applicable to each such possible finding was furnished them, and they returned their verdict upon the form first mentioned, in the following language: "We the jury in the above entitled action find the defendant Wm. J. Jones Guilty as charged in the information, with a recommendation for mercy."

The court thereupon reminded them that they had been instructed that in such a case they should in the event of conviction state in their verdict whether the punishment should be confinement in the penitentiary, or in the county jail, as provided by section 264 of the Penal Code. It was said by the trial court: "The court is not sure or clear just what you mean by the term 'mercy.' And I will ask you to go back to your jury room and see if you have any other, or if you change your verdict to come within the instruction as rendered. You do not need to do that, but I am now reading the law to you; and I do not direct you to do it, but I think it well to have you go back and consider." The forelady replied that she thought their verdict had automatically taken care of the question of punishment. The jury again retired, shortly returning into court with the same or a similar verdict, bearing the insertion, "States Prison punishment," and adding to the statement "with a recommendation for mercy," "meaning leniency."

It is contended that the first verdict indicated an intention that the punishment should consist of a county jail sentence only, and that since section 1097 of the Penal Code provides that where there is a reasonable doubt as to the degree of guilt, a defendant can be convicted of the lowest degree only. Appellant quotes from *People v. Pratt*, 67 Cal. App. 606 [228 Pac. 47], wherein was involved only the question of the applicability of an amended statute to an offense committed prior to the amendment, and it was contended that the jury should have been instructed in accordance with the latter. It was there said: "When forms of verdict are submitted to the jury they should be comprehensive enough to cover every phase of the law under the evidence, and should include any kind of verdict that

the jury would be warranted in returning after its deliberation, and this is especially so where a statute requires that a verdict of 'guilty' shall assess the degree of the crime and the place of imprisonment. If, therefore, the defendant was entitled to the benefit of the amendment it is clearly apparent that his substantial rights have been affected.''

It was said, however, that no error had been committed, and the judgment was affirmed. If the cited case is at all pertinent here, what was said as to the form of verdict is merely *dictum* as to the question presented by this appellant, but in the instant case the jury were furnished with each form of verdict, and were fully instructed that they should also state the place of confinement therein. They recommended leniency in each of their verdicts, but entirely ignored the instructions of the court as to place of punishment in the first, and did not alter it in this respect in the second, but added thereto ''States Prison punishment.'' The court did not by requiring them to complete their verdict in any manner indicate a preference in this respect, if, indeed, it entertained an opinion in the matter. Had the jury decided at the outset that confinement in the county jail should be inflicted, it would have been a natural thing for them to have added ''County jail punishment,'' instead of the amendment which they actually made of their own volition, and with a full understanding of the law. It is not contended that the jury inadvertently designated one place, intending the other, nor do we desire to be understood to hold that such contention would be tenable, but it lay with them to fix the place of confinement, and we cannot say as a matter of law, nor do we think it the fact, that they were influenced by the requirement that they complete the verdict to insert a penalty which was entirely contrary to their best judgment upon the evidence. In *People* v. *Jenkins,* 56 Cal. 4, it was held to be the duty of a trial court to require amendments of verdicts so that they meet the statutory mandates.

Other alleged errors are assigned, but they consist of points so well settled as to demand slight, if any, discussion. They relate to the giving or refusal of requested instructions. [8] The defendant requested an instruction to the effect that in determining the credibility of the prosecutrix they should consider that the law required her to make

complaint at the first opportunity after the occurrence. This is not the law. *People* v. *Gonzales*, 6 Cal. App. 255 [91 Pac. 1013], is cited by appellant, but it was there said that in order that evidence of complaint be admitted it should follow so closely upon the event as to be practically the first opportunity. It is therefore not authority for the point advanced, and other cases cited are of no avail here. From what we have already said it is apparent that the prosecutrix did complain to her mother at various times, but, whether near or remote to the occurrence, she received no consolation.

[9] It is argued that a requested instruction should have been given to the effect that the jury should keep in mind the fact that a charge of this nature is particularly difficult to disprove, though easily made, and that they should be satisfied to a moral certainty and beyond a reasonable doubt that the case was completely made out before they could render a verdict of conviction. We think other instructions fully covered the subjects here mentioned, and though not couched in the same language were sufficient. Under such circumstances error is not assignable. (*People* v. *Pacheco*, 70 Cal. 473 [11 Pac. 761].)

[10] Finally, it is contended that the court erred in instructing the jury that the date alleged in the information upon which the offense charged was alleged to have been committed was immaterial; that any date on or about the fifth day of May, 1924, prior to filing the information was sufficient, and that the date need not be specifically proven. Such instruction was not erroneous. (*People* v. *Britt*, 62 Cal. App. 674 [217 Pac. 767]; *People* v. *Sheffield*, 9 Cal. App. 130 [98 Pac. 67]; *People* v. *Dinsmore*, 102 Cal. 381 [36 Pac. 661].)

No error appearing, the judgment and order appealed from are affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 3, 1926, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing in the supreme court after decision and judgment in the district court of appeal is denied.

[11] As a matter of law, however, we would be constrained to hold as error the ruling of the trial court sustaining objections to the cross-examination of the prosecutrix as to whether she consented to the act of sexual intercourse or whether it was committed by fear or force and against her will. We can well understand if she had claimed the act was committed by force how her claim might have laid the foundation, not only for impeachment as to the manner in which the act was accomplished, but also under certain circumstances it might have laid the foundation for impeachment as to whether the crime was committed at all. However, we have examined the record and feel certain that the court's ruling did not carry with it any prejudicial effect for the reason that the prosecutrix practically admitted throughout her examination that no force or threats were employed by the defendant and no serious contention to the contrary was made. This being so, the defendant was left in as favorable a light so far as this issue is concerned as it was possible for him to be placed. As an abstract question of law, however, we cannot approve of the court's ruling in sustaining the objections to the questions asked as to whether she resisted the defendant's acts for the reason that the evidence sought to be elicited tended to disclose the circumstances of the crime and it could not properly be excluded on the theory that the prosecutrix, being under the statutory age, all inquiry as to the circumstances of the crime was therefore cut off. This evidence was not offered as a justification or excuse for the commission of the offense but was offered as constituting a part of the crime charged. We, therefore, disapprove of that part of the opinion which seems to sustain the trial court's ruling but hold that it produced no prejudicial result so far as the conviction was concerned.