[Crim. No. 2944.   Second Appellate District, Division One.—March 24, 1937.]

THE PEOPLE, Respondent, v. CHARLES MILLER, Appellant.

Gladys Towles Root for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

HOUSER, P. J.—From a judgment of his conviction of the crime of robbery, as well as from an order by which his motion for a new trial was denied, defendant has appealed to this court.

Although stated severally and from different respective viewpoints, three of the points upon which appellant relies for a reversal of the judgment depend for their success upon the single specification, to wit, that the evidence was insufficient to support the judgment. In that connection, the principal evidence of guilt consisted in the identification, by the victim of the robbery, of defendant as the person who committed the crime. ■ However, in addition thereto, it appeared that at a time after defendant had been arrested for the commission of the offense and was being detained in jail, at which time, in the presence of defendant, the victim asserted that defendant was the guilty person, on defendant's inquiry regarding the reason for such identification, and thereupon being informed that it was on account of the fact that he had "held me (the victim) up about two and a half years ago",—in substance, defendant stated that such a thing was impossible, for the reason that he was "in jail at the time"; whereas, on the trial of the action it was testified by each of several witnesses, including defendant himself, that at the time in question defendant was not in jail, but that in fact he and his father were living together in an apartment house in the city of Pasadena.

False statements made by one who has been confronted with an accusation of the commission by him of a criminal

offense have repeatedly been held to constitute proper evidence of consciousness of guilt. In the case of *People* v. *Sampsell*, 104 Cal. App. 431 [286 Pac. 434], it was said: "As held in *People* v. *Peete*, 54 Cal. App. 333 [202 Pac. 51], false declarations made by an accused for the purpose of misleading or warding off suspicion, though not conclusive of guilt, may, nevertheless, strengthen the inference arising from the facts; . . . '' To the same effect, in *People* v. *Cole*, 141 Cal. 88 [74 Pac. 547], language taken from the opinion of Judge Cooley, in *People* v. *Arnold*, 43 Mich. 303 [5 N. W. 385, 38 Am. Rep. 182], was used as follows: "Thus, it may be shown that he made false statements for the purpose of misleading or warding off suspicion; though these are by no means conclusive of guilt, they may strengthen the inference arising from other facts, . . . '' (See, also, *People* v. *Farrington*, 140 Cal. 656 [74 Pac. 288]; *People* v. *Clark*, 2 Cal. App. (2d) 743 [38 Pac. (2d) 796]; *People* v. *Zabriski*, 135 Cal. App. 169 [26 Pac. (2d) 511]; *People* v. *Peccole*, 92 Cal. App. 470 [268 Pac. 473]; *People* v. *Garcia*, 83 Cal. App. 463 [256 Pac. 876]; *People* v. *Johnson*, 51 Cal. App. 464 [197 Pac. 135]; *People* v. *Cox*, 29 Cal. App. 419 [155 Pac. 1010].)

▇ From testimony that was given by the victim of the robbery, it appears that the greater part of the face of the robber was concealed from view by means of a cap which he wore pulled down over the upper part of his face. His eyes were not visible; all that the victim could see of the facial anatomy of the robber was that which lay between the lower half of his nose and immediately above his collar. The victim of the robbery had never seen the robber before the occasion when the robbery occurred; nor did he ever see him again until after nearly two and one-half years had elapsed following the date of the robbery. Nevertheless, the identification of defendant as the robber, by the victim, was unhesitating, complete and most positive. However, on the trial, in addition to the bare fact of identification, the victim described the outer clothing and the cap which he stated were worn by the robber at the time when the crime was committed, but otherwise was unable to give details as to his shoes, necktie, etc. His suit of clothes and his cap were described as "a brown suit, with white or gray stripes,

. . . about three-quarters of an inch, with a light tweed cap''. But regarding the rest of the robber's clothing the victim said, ''I don't recall any other articles of clothing, the color, design, or anything.'' However, ''his hair was blond''. He ''saw his sideburns below his cap''. The victim first testified that the robber ''shoved a gun in my stomach''; but on cross-examination stated that the robber had his hand in his pocket and that the victim saw the ''outline'' of what appeared to be a ''gun'' in the coat of the robber; that the robber was about ''five feet eight inches'' tall, and that he weighed from 138 to 150 pounds.

On behalf of defendant, each of several witnesses in substance testified that although she had known defendant very well for some time preceding the date of the robbery, she had never seen him wear either a brown suit of clothing or a cap of any description; which testimony was corroborated by the father of defendant, who testified that defendant never owned a cap or a brown suit of clothing; nor did he ever own a ''gun''. In addition to his denial of guilt, defendant also corroborated all such testimony. Furthermore, he testified that with his shoes ''off'' he was ''five foot eleven'' tall, and that at the time when the robbery occurred he weighed ''around 165 to 168 pounds''.

Taken at its face value, and solely from a legal standpoint, it is apparent that sufficient appears in the evidence to have authorized the jury to reach the conclusion that defendant was guilty of the offense; nor, again from a legal standpoint, would this court be justified in declaring that the testimony that was given by the victim of the robbery was inherently improbable,—from which, with relation to appellant's specifications of error, it follows (1) that by reason particularly of the sufficiency of the evidence the judgment was not against law; (2) that the trial court committed no reversible error in denying defendant's motion for a new trial; or (3) in refusing to ''instruct'' the jury to acquit defendant. (*People* v. *Green,* 93 Cal. App. 435 [269 Pac. 687], and cases there cited; *People* v. *Oakleaf,* 66 Cal. App. 314 [226 Pac. 24]; *People* v. *Miller,* 139 Cal. App. 644 [34 Pac. (2d) 788]; *People* v. *Dunlap,* 12 Cal. App. (2d) 333 [55 Pac. (2d) 522].)

Appellant also asserts that ''the court erred in refusing to give the defendant time in which to secure and present affidavits containing newly discovered evidence in support

of the motion for a new trial where the said affidavit in support of the evidence was only obtainable out of the State of California and it was impossible to produce same at the time of the motion for a new trial''.

Defendant's notice of intention to move for a new trial included the ground of "newly discovered evidence"; but neither accompanying such notice, nor at all, did he file any affidavit which purported to contain a statement of what the "newly discovered evidence" would consist. With reference thereto, when the motion came on for hearing, among other things, the attorney who represented defendant stated:

"I have set up as one of those grounds in there, that it is our intention to file newly discovered evidence, *providing we can find it.* The situation is that I am not ready to present this newly discovered evidence this morning, in that *I have received information* that there was a chap in Pasadena, at the time of this alleged robbery which was on February 2nd, 1934, who was known to look a great deal like Charles Miller (defendant) and who was in possession and wore a brown striped suit and a tweed cap at various and odd times while living in Pasadena. I understand that the lad is now incarcerated in a penitentiary in the East and is doing time. I had tried to get from the Bureau of Identification a picture of this one person, Mr. Lyle (?), so that I could take it over and present it to Mr. Wes Kelly, the complaining witness in this matter, and see if, in looking at this picture, he would realize that he had made a mistake in naming this defendant as the one that was in his door."

One of the rules which is applicable to a motion for a new trial on the ground of "newly discovered evidence" is that before such motion may prevail, the applicant must establish not only the exercise of due diligence by him in endeavoring to discover such evidence before the trial of the action and to produce the same thereat, but as well, that at the time when the motion comes on for hearing he must present affidavits of witnesses by whom the newly discovered evidence is expected to be given;—the exception thereto being that "if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all the circumstances of the case, may seem reasonable". (Sec. 1181, subd. 7, Pen. Code. See, also, 8 Cal. Jur. 427, 431.) Apparently no show-

ing was made by defendant in regard to any endeavor on his part to comply with the terms of the statute. The probabilities are that if on the date when the robbery occurred "there was a chap in Pasadena who was known to look a great deal like Charles Miller (defendant) and who was in possession (of) and wore a brown striped suit and a tweed cap", such facts would have had to be established by witnesses who were available as such both at the respective times when the trial was had and the motion was heard. It may be that if an affidavit could have been procured from the described person, it, also, would have been useful; but nothing in the record herein even indicates the possibility that that person would give such an affidavit; moreover, neither from the same, nor from any other source, is it disclosed that defendant made any effort either to make an early discovery of such alleged evidence, or to produce it at any time; nor does it show on what date the attorneys for defendant "received information" regarding the "newly discovered evidence". The fact that at some indefinite time the attorney who represented defendant "had tried to get from the Bureau of Investigation a picture of this one person, Mr. Lyle (?), so that I (she) could take it over and present it to Mr. Wes Kelly, the complaining witness in this matter, and see if, in looking at this picture, he would realize that he had made a mistake in naming this defendant as the one that was in his door", was wholly immaterial. Considering all such facts in connection with the motion for a new trial, it may not properly be asserted that the trial court abused its discretion in denying it.

No error appearing in the record herein, the judgment and the order by which defendant's motion for a new trial was denied are affirmed.

York, J., and Doran, J., concurred.