[Crim. No. 3398. In Bank.—April 2, 1931.]

THE PEOPLE, Respondent, v. ALEXANDER PANTAGES, Appellant.

Le Compte Davis, Jerry Giesler, W. I. Gilbert, Louis Titus and Earle M. Daniels for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and Robert P. Stewart, Chief Deputy District Attorney, for Respondent.

THE COURT.—A hearing in this cause was granted in order that this court might give to the contentions of the parties, presented by extended briefs and on a voluminous record, more thorough consideration than was possible within the constitutional period. After oral argument and a careful consideration of the points involved and an examination of the record, we adopt as the opinion of this court in the main the opinion of the District Court of Appeal, Second Appellate District, Division One, written by Mr. Justice Houser, as follows:

"Defendant appeals from a judgment of conviction of the crime of rape of 'a female person under the age of eighteen years'. He also appeals from each of three several orders by which was denied respectively his motion for a new trial, his motion in arrest of judgment and his motion for leave to file application for probation.

"It is first contended by appellant that the evidence adduced on the trial of the action was legally insufficient to support the verdict. It would serve no useful purpose to herein set forth the facts which were presented by the prosecution in substantiation of the charge made against defendant. ▮ In that regard it may suffice to state that after careful consideration of the evidence, even viewed in the light as presented by appellant, this court is of the opin-

242

ion that the contention as to its legal insufficiency cannot prevail.

 "Misconduct of the district attorney and of his chief deputy is urged by appellant as a reason for the reversal of the judgment and the order by which the motion for a new trial was denied. In that connection, the first specification relates to comments made by the district attorney in his argument to the jury, particularly with reference to the failure of defendant to produce evidence in support of a statement made by one of the attorneys representing defendant in his opening statement to the jury as to what defendant expected to prove in defense of the accusation of the crime, for the alleged commission of which he was then on trial. The history of such several errors of which appellant first complains is that in his argument to the jury the chief deputy district attorney made the remark that defendant's attorneys had 'failed to make good the fulfillment of their promise', which represented only 'a bunch of unredeemed pledges'; and that 'you saw how the court repeatedly called for an offer to make competent these innuendoes—' After objection thereto by defendant, the court instructed the jury to disregard 'any remarks of counsel about offers of proof'. Thereafter, in presenting his argument to the jury, the district attorney referred to the same matter as that which theretofore had been commented upon by the chief deputy district attorney, to which remarks defendant again objected. Thereupon the trial court ruled that 'the district attorney may call attention to the opening statement and may mention the fact that that was not sustained by evidence, and that there was no evidence to that effect'. On each of several other occasions following an objection by counsel for defendant to statements contained in argument presented by either the district attorney or his chief deputy—which statement injuriously reflected upon and criticized counsel for defendant for their failure to produce evidence in substantiation of designated portions of their opening statement to the jury, the judge of the trial court not only failed to rebuke the district attorney or his chief deputy, but indicated his approval of the remark in question. An illustration of objectionable remarks made by the district attorney is the following:

" 'Now, ladies and gentlemen, the only reason why I am stating this thing to this jury is this: They knew in their hearts they could not prove it, they knew they had no evidence and they knew in their hearts that there was no such evidence. They had to get something before this jury. They had intimated to you, they had insinuated it to you, they had to plant a seed in your mind, and the only way in God's green world that they could get it in front of you, in the absence of some testimony, was to say it to you in their opening statement, hoping that we would overlook it in closing argument. . . . They knew in their hearts they could not prove it, for they knew it was not true, but they had to get something of that type, they had to throw up a smoke screen, and that opening statement, ladies and gentlemen of this jury, is just about in keeping with the whole character of the insinuation, the innuendoes, the aspersions on the character of that old Mrs. Pringle as she sat on the witness-stand here. . . . His whole conduct, the whole conduct of the defendant, from the moment that W. I. Gilbert stood in front of this jury, has been the projection of a defense based on insinuation and innuendo and indirection without one single effort, or one single word of testimony coming from the lips of any human being to this jury to back up their insinuations. They could not do it and they knew it, any more than when Mr. Gilbert said, as a positive fact, in the same statement, that the spots on her clothing will be accounted for by her own physical condition—by her own physical condition! Where is your testimony? . . . Has there been produced before this jury one single word that would account for the presence of spermatoza upon a dress of that girl other than from the organs of the defendant himself, Alexander Pantages? I say to you, with all the earnestness and all the candor that God has put in me, that they had no evidence, and they knew before they came here that they had no evidence as to anything of that sort. They had to implant it in your minds. They had to have it there in your mind when you heard the State's case come in, instead of waiting, as they usually do in these cases, for their opening statement at the beginning of their case they implanted the seeds of innuendo and indirection into your mind, all through the case. They have not lived up to their promise to you. They could

244

not and they knew in their hearts that it was not true and they could not have lived up to it, and they knew when they stood here and made a positive statement of fact to this ·jury, and to this court, that they could not prove the things that they told you they were going to prove. . . . '

█ "In *People* v. *Stoll,* 143 Cal. 689 [77 Pac. 818], the rule is stated that the only purpose of an opening statement by counsel is to apprise the jury in a general way of what is expected to be proved; but that it has no binding force as against the party in whose behalf it is made; nor can it be considered as evidence of any fact. In each of several cases where no evidence was offered in support of an opening statement made by a district attorney the court held that in the absence of a showing of 'bad faith' on the part of the district attorney in making such statement, no reversible error was present. (*People* v. *Wong Hing,* 176 Cal. 699 [169 Pac. 357]; *People* v. *Lewis,* 124 Cal. 551 [45 L. R. A. 783, 57 Pac. 470]; *People* v. *Donaldson,* 36 Cal. App. 63 [171 Pac. 442]; *People* v. *Davis,* 26 Cal. App. 647 [147 Pac. 1184].)

"In the instant case the record discloses the fact that on numerous occasions occurring during the trial, owing to objections which were interposed by the district attorney and which were sustained by the trial court, unsuccessful efforts were made in behalf of defendant to introduce evidence in support of the alleged facts which, in his opening statement to the jury, the attorney for defendant had said he expected to prove, and which statement was the subject of criticism and argument by the district attorney, from which it follows that, at least legally speaking, defendant may not be said to have presented his opening statement in 'bad faith'.

█ "It is clear that in the trial of an action, proper argument should be based solely on the evidence and that if the opening statement to the jury does not constitute evidence and is not binding upon the party making it, then, in the absence of 'bad faith', his failure to 'make good' should not be argued by the opposite party as a reason for a verdict. █ The conviction of a defendant of the crime of which he is accused should rest not even slightly upon the dereliction (if any) of his counsel, but ordinarily should be grounded upon acts committed by the defendant either

actually or by law imputed to him. As ruled by the trial judge, and as indicated in *State* v. *Boyce*, 24 Wash. 514 [64 Pac. 719], the district attorney and his chief deputy were within their legal rights in plainly and simply directing the attention of the jury to the fact that, although counsel for defendant had stated to the jury that he expected to prove certain specified facts on behalf of defendant, nevertheless no evidence had been received by the court in substantiation thereof, but when, in substance, the district attorney and his chief deputy had thus far proceeded, the limit of legitimate *quasi* argument in that regard had been reached. To go further (and in the face of the fact that defendant had repeatedly, but unsuccessfully, attempted to introduce evidence relating to the situation which he had stated that he expected to develop) and to charge the attorney or attorneys who represented defendant with the grossest of 'bad faith' in the matter, and thereupon, impliedly at least, to predicate an impassioned and compelling argument demanding the conviction of defendant, constituted an error which was prejudicial to the substantial rights of defendant. It is a well-known fact that intemperate and inflammatory language coming from the lips of a high officer of the county claims an attention from the ordinary juror which, if similarly given voice by the defense, it does not receive. When it is considered that what was said by the district attorney was apparently with the sanction and approval of the judge of the trial court, the prejudicial effect on the substantial rights of the defendant becomes apparent.

██ "The next specifications of alleged misconduct by the district attorney relate to his argument to the jury wherein he either indicated, or by his language expressly stated, his personal opinion with reference to the personal character or reliability of each of two witnesses. The several remarks to which attention herein is directed were as follows:

"(a) ' . . . Doctor Beatty came on the witness stand here. I did not put Doctor Beatty on, and I say to this jury right now, *as long as I am district attorney of this county I will never put Doctor Beatty on the witness stand.*'

"(b) ' . . . What does Mrs. Biffle say? Mrs. Biffle, ladies and gentlemen. I feel sorry for her. *She is here*

*trying desperately to do what any wife would do, to support her husband.* Mrs. Biffle never appeared in this picture. She testified that she read Mr. Biffle's testimony in the newspaper at home *and that out of desperation she came down here to support her husband,* but she didn't quite support him for, listen,—

"(With reference to the statement that '*out of desperation she came down here to support her husband',* it is contended by appellant, and not denied by respondent, that 'a careful review of the testimony of Mrs. Biffle, . . . will not disclose even a remote basis for the inference drawn by the district attorney'.)

"In addition to the foregoing, appellant complains of remarks made on each of two separate occasions in argument by the chief deputy district attorney, wherein he said:

"(c) ' . . . How about Mr. Gilbert (one of the attorneys who represented defendant), just as skilful as any of them, and a little bit worse. You know what he did in your presence. He actually asked that man Hale, *who is as clean as a hound's tooth and there isn't a thing against him,* "Don't you know there are ten felony charges pending against you, or were pending against you on August 9th?"'

"(d) ' . . . Then I recall another which is symbolic of the fairness of these three experts engaged in this arduous defense and simply speak of the innuendo *when Mr. Gordon, who otherwise stands, and who stands without the possibility of impeachment,* they asked him questions about his visit to Reno. It was ruled out; it is not in the case.'

"In the case of *People* v. *Alpine,* 81 Cal. App. 456 [254 Pac. 281, 286], the record shows that the deputy district attorney in charge of the prosecution of the action made various remarks which reflected upon each of several witnesses who had testified in behalf of the defendant. On appeal, in considering the question generally, among other things, the appellate court said:

" 'The remarks of the deputy district attorney to which appellant took exception constituted misconduct of an extreme type, and the trial judge erred in not instructing the jury to disregard them. They did not present a legitimate argument upon the evidence before the jury, and, moreover, *they constituted an impeachment of appellant's witnesses in a manner not contemplated by the law.'*

"In *State* v. *Heaton*, 149 Wash. 452 [271 Pac. 89, 91], a situation similar to that involved herein was given consideration by the court. It was there said:

" 'The declarations of counsel for the state in his argument to the jury (above quoted), referring to the credibility of certain of the state's witnesses, to the effect that he had worked with them long and was in a position to know their character, transcended the bounds of legitimate argument, and amounted to an attempt on the part of counsel to testify as to the witnesses' good character. Such a statement as this cannot be met by any answering argument *and it is vain to attempt to do away with the prejudicial effect of such assertions by an instruction of the court to the effect that the argument of counsel is not to be regarded as evidence.*' (Citing authorities.)

"In the case of *Gutzman* v. *Clancy,* 114 Wis. 589 [58 L. R. A. 744, 90 N. W. 1081], wherein it appeared that in his closing argument to the jury, in referring to one of the witnesses, the attorney for the prosecution had personally impeached the integrity of such witness, the conduct of the attorney was denounced and the conclusion reached that the error was so prejudicial as to necessitate a reversal of the judgment. The following excerpts from the opinion of the court will serve to illustrate the view which is generally taken with reference to such conduct:

" ' . . . That the statement objected to, upon its face, is improper, as an attempt to state facts to the jury as of the knowledge of the counsel, and not by way of inference from the evidence which they had a right to consider, is obvious. . . . Counsel have no right to avail themselves of the opportunity of addressing the jury in argument *to make assertions upon their own knowledge,* which, if admissible at all, could be so only under the sanction of a witness' oath. . . . That solemn statements of fact, *not by way of argument and deduction from the evidence, but as of the counsel's own knowledge,* are likely to have weight with juries, cannot be doubted. The respectability and standing of counsel only serve to enhance the peril. . . . '

"In *People* v. *Lieska,* 161 Mich. 630 [126 N. W. 636], where on appeal error arising from a similar situation was specified, among other things, the court said:

248

" ' . . . It has been repeatedly held by this court that, . . . it is reversible error for a prosecuting attorney to make unwarranted attacks upon respondent's witnesses calculated, to arouse in the jury an unjust suspicion of their character and truthfulness. . . . Juries very properly regard the prosecuting attorney as unprejudiced, impartial and non-partisan, and insinuations thrown out by him regarding the credibility of witnesses for the defense are calculated to prejudice the respondent. As was said in *People* v. *Cahoon,* 88 Mich. 456 [50 N. W. 384], *supra,* these questions and insinuations reflected upon the character of the witnesses. The prosecuting attorney has no right to discredit the witness by innuendo.'

'And in *People* v. *Huff,* 173 Mich. 620 [139 N. W. 1033, 1036], in which the record disclosed the fact that the prosecuting attorney adopted methods not unlike those presented for consideration in the instant case, the supreme court of Michigan made the statement that witnesses were entitled to respectful consideration, and not only was it the duty of the trial court to protect witnesses from insinuation and unjust and unwarranted attacks of counsel, but that ' . . . it was highly improper and reversible error for the prosecuting attorney, in the absence of testimony on the subject, to thus praise and extol the skill and standing of a witness for the people. Juries are apt to consider the prosecuting attorney as unprejudiced and impartial, and statements of fact made by him are apt to have great weight. This court has held that it is improper for the trial court to call attention to the high character of a witness in the charge. (*Wisner* v. *Bardwell,* 38 Mich. 278.) It is equally improper for the prosecuting attorney to go outside the testimony and make such statements.'

"The record herein shows that as to each of the several remarks hereinbefore set forth timely objection thereto was made by an attorney representing defendant on the trial of the action, and that in each instance the judge of the trial court instructed the jury to disregard it. It is now urged by respondent that in such circumstances any erroneous conduct in the premises committed by the district attorney, or by the chief deputy, must be deemed to have been corrected and the error thus voided. Although author-.

ities are not lacking in their declaration of the law in substance that the effect of such prejudicial misconduct may be cured by an instruction to the jury to disregard the remark of counsel, nevertheless an exception to such general rule is noted where the misconduct is of such a character that it is reasonably clear that its harmful result could not have been obviated or remedied by an instruction to the jury to disregard it. (*People* v. *Simon,* 80 Cal. App. 675, 679 [252 Pac. 758], and cases there cited.) It is apparent that repeated acts of misconduct of the same tenor may present a situation radically different from a single isolated transgression of the same general nature; also that a stern rebuke by the judge of the trial court to the violator of the rule which forbids conduct of the nature of that here under consideration might possibly remove the impression initiated by the misconduct in question. But, to the contrary, that a mild suggestion from such judge as to the impropriety of several separated acts of misconduct, each of the same variety as the others, might produce no result other than a possible accentuation in the minds of the members of the jury of the specific remarks which constituted the several acts of misconduct and carry with them the conviction that in their essence, aside from technical rules of legal practice, the assumed misconduct was in fact praiseworthy and in reality should be considered as entirely proper and wholly exempt from just, adverse, judicial censure, or other criticism.

■ "Another specification of error presented by appellant relates to misconduct on the part of the district attorney in that in addressing the jury he prejudicially assumed the existence in the evidence of the fact that the prosecuting witness was a virgin; and thereafter, based wholly on such assumption, made a dramatic appeal to the passion and prejudice of the jury. Illustrations of several of the remarks made by the district attorney are the following:

"(a) ' . . . What did that telephone call show you or this court, or show in this case, whether or not this man raped (the prosecutrix) on the night of August 9th? They put it there to do nothing more in God's world than to blame that girl's mother, *to assassinate and destroy the character* as that man *destroyed her virginity* and her body

on the afternoon of August 9th, by insinuation, by indirection, by—under that guise and that camouflage. . . . '

"(b) ' . . . The girl sat there and finally, drive, drive, drive, when she came to the fact of *the great moment of her life, and all that any woman holds dear is taken from her,* not under the vows of the marriage bed, not under the vows of love given to her, but by brute force, at the hands of a fiend that afternoon, she finally broke down, and there wasn't a man or woman in this courtroom whose heart did not know that that girl broke down honestly and sincerely because of what had happened to her at the hands of this man with the polluted body and polluted soul on the afternoon of August 9th. . . . '

"(c) ' . . . This is the insanity that lurked in that man's polluted mind, that is the insanity, and that is the thought that was harbored by his filthy body *as he struck that girl down from her girlhood* and placed upon her brow, or attempted to place upon her brow, the crown of infamy by branding her a blackmailer. What do you want him to do? Are the American jurors of today, are men and women of this country, going to stand here and let that man with all of his power or authority in America cover up and brand with infamy, by reason of the very power and wealth and strength that he has, *after taking this girl's virginity, after destroying her character,* then to brand her with the infamy of being a blackmailer by reason of the very position he holds? That is the insanity that lurked in that man's mind that afternoon, and this jury knows in your hearts that that is the insanity that lurked in this man's mind that afternoon as he took that girl's body.'

"However, in connection therewith it should be noted that at the close of the case, the trial court instructed the jury that:

" ' . . . If counsel, upon either side, or the court have made any statements in your presence concerning the facts in the case, you must be careful not to regard such statements as evidence, and must look entirely to the proof in ascertaining what the facts are.'

"In the case of *People* v. *Fong Sing,* 38 Cal. App. 253, 266 [175 Pac. 911, 916], in dealing with an analogous situation, in part, the court used the following language:

" 'There is nothing we can add to what has been said in the former opinion filed herein, except to express hearty concurrence in the general animadversion of the learned lawyer upon the practice too often resorted to in criminal cases by public prosecutors of lugging into their cases in argument matters having vital bearing upon the case which have not been brought in by evidence and which are calculated to deprive an accused of that fair and impartial trial which is guaranteed to him by the Constitution and the statute laws of the state. . . . And it is equally a mistake for such an officer to suppose that it is proper for him to present to the jury anything but strictly legal evidence in support of the charge, or that it is within the sphere of legitimate argument to prejudice the standing of the accused in the minds of those who are to determine an issue so serious to him by insinuating in the course of his address that some fact bearing strongly against the accused which has not been proved by proper evidence in reality exists.'

"The language of the Supreme Court of this state, used by it in the case of *People* v. *Lee Chuck*, 78 Cal. 317, 328 [20 Pac. 719, 723], is indicative of the general view held by the several courts of last resort throughout the United States with reference to the duty of the district attorney in the prosecution of a criminal action. It is as follows:

" 'We have been called upon many times to caution, sometimes to rebuke, prosecuting officers for the overzealous performance of their duties. They seem to forget that it is their sworn duty to see that the defendant has a fair and impartial trial, and that he be not convicted except by competent and legitimate evidence. Equally with the court, the district attorney, as the representative of law and justice, should be fair and impartial. He should remember that it is not his sole duty to convict, and that to use his official position to obtain a verdict by illegitimate and unfair means is to bring his office and the courts into distrust. We make due allowance for the zeal which is the natural result of such a legal battle as this, and for the desire of every lawyer to win his case, but this should be overcome by the conscientious desire of a sworn officer of the court to do his duty, and not go beyond it.'

"Without citing further authority, it may suffice to state that, particularly in criminal actions, the practice of indulging in inflammatory remarks to the jury, especially where, as here, they are founded upon facts not in evidence is universally condemned by reviewing courts and frequently assigned as the sole cause for reversal of judgments and the award of new trials to defendants. In this connection it may be noted that the case of People v. Hail, 25 Cal. App. 342 [143 Pac. 803], although following a well-beaten path with reference to misconduct of the district attorney in the particular here in question, contains many appropriate comments and suggestions which well might be the subject of careful consideration. For further illustrations of the judicial attitude toward infractions of the rule, see People v. Clayton, 89 Cal. App. 405, 413 [264 Pac. 1105], People v. Alpine, 81 Cal. App. 456, 467 [254 Pac. 281], People v. Adams, 92 Cal. App. 6, 10 [267 Pac. 906], and cases there cited.

"Although great allowance should be and universally is made by the courts for the zeal of the district attorney, especially as may be displayed by him in the heat of argument, and although, as is stated in the case of People v. Branch, 77 Cal. App. 384 [246 Pac. 811], the remarks ordinarily made by a district attorney may be considered by the jury as 'argumentative, rather than evidentiary in their nature', nevertheless such an assumption regarding the effect of any and every remark made by a district attorney in his argument to the jury, wherein, either directly or by insinuation, he personally testifies to some vital fact in the case, should neither escape deserved adverse criticism from the bench as well as from the bar, nor be universally cured either by regarding it as 'argumentative, rather than evidentiary', or by a general and all inclusive instruction to the jury to disregard it.

"Appellant specifies several other alleged acts of misconduct by the district attorney, or by his chief deputy, but as in principle they are more or less covered by what heretofore has been stated herein, it becomes unnecessary to devote the attention to them which otherwise they might well deserve.

"Prejudicial error is urged by appellant in that the trial court refused to permit defendant to cross-examine

a witness produced by the prosecution relative to the motives or 'state of mind' of such witness. It appears that the testimony given by such witness was of extreme importance to the prosecution, in that to a great extent it was corroboratory of the testimony given by the prosecutrix. In connection with the question thus presented, the record discloses that, as was indicated by admissions or statements of counsel representing defendant, and which were developed in argument had in the absence of the jury, defendant proposed to inquire of the witness whether he knew, or had information to the effect, or suspected that he had been indicted in the state of Texas on ten separate criminal charges, or on any other charge or charges; and assuming the existence of such fact or facts, what arrangements, or promises, if any, had been either expressly or impliedly made or held out to him, especially by the district attorney of the county of Los Angeles, or by any of his deputies, or by any member of the police department of the city of Los Angeles, or by the sheriff of the county of Los Angeles, or by any of his deputies, by or through which he was either told directly, or was given to understand, that by testifying in any respect favorable to the prosecution in the instant case he might expect some leniency, or at least more favorable action from the district attorney with reference to the possible extradition of the witness on the Texas indictments against him, than though his testimony were not so favorable to the prosecution. Furthermore, that in and by such proposed cross-examination, even in the total absence of any substantial foundation for the existence of any such anticipated action by the district attorney, defendant claimed the right to ascertain whether the witness had then, or ever had, a belief, or hope, or 'state of mind', that by reason of his giving testimony favorable to the prosecution in the instant action he would secure, or might be likely to obtain, any favor or advantage whatsoever at the hands of the district attorney.

"It should require neither argument nor authority as the basis for an assertion that if it be established as a fact that by the use of direct or even by veiled threats, or through insinuations, or innuendo, or intimidation, or menace of any sort, or by means of promises of assistance,

or of influence to be exerted in his behalf, expressly made, or but ambiguously suggested by or through anyone either actually or assumedly in authority in the premises, or even by an utter stranger or interloper in the proceedings, or by any way, method, or manner whatsoever, a witness be thereby induced either to give false testimony, or to color the truth of his sworn statements—the jury should be placed not merely in possession of the affirmative ultimate fact of the bias of the witness, or his denial thereof, but, if necessary, should hear the basic facts, if any, upon which such conclusion be founded. In connection with the question of law presented for consideration by this court, it appears that the only material questions which defendant was permitted to ask of and to have answered by the witness were as to whether, on the day on which the offense of which defendant was charged was committed, the witness knew that ten felony charges were pending against the witness in the state of Texas; also as to whether, prior to such date, he was aware of that fact. Each of such questions was answered by the witness in the negative. All other questions proposed to be asked of the witness by counsel representing defendant, which had any direct bearing on the motive, or 'state of mind' of the witness, at the time he was giving his testimony, were excluded by the trial court. Illustrative of the question propounded to the witness, and to which objections thereto presented by the prosecution were sustained by the trial court, is the following:

" 'Did you discuss with any member of the district attorney's staff, or of the police department who were connected with this case, the question as to whether or not there were ten felony charges pending against you in Texas?'

"In claiming the right to cross-examine the witness concerning the alleged indictments which were then or had been pending against him in the state of Texas, defendant relied, not upon the provisions of section 2051 of the Code of Civil Procedure, which relate particularly to the impeachment of a witness, but rather upon that portion of section 1847 of the Code of Civil Procedure which, in effect, provides that, notwithstanding the rule of law that a witness is presumed to speak the truth, such presumption may be

repelled by evidence affecting *'his motives'* in giving his testimony.

■ "As relates to the impeachment of a witness in such manner as is provided by section 2051 of the Code of Civil Procedure, authorities emanating from various jurisdictions throughout the United States are not in harmony, one with the other; but as concerns the situation hereinbefore outlined, where the motive or 'state of mind' of the witness is the objective of the cross-examination, the several authorities in this state are unanimous in the declaration that questions which would have a tendency to show bias of a witness are not only competent, but that great latitude in cross-examination should be allowed in developing its existence. A situation analogous to, if not identical with, that which is presented by the record herein has heretofore received consideration in each of several cases decided by the appellate courts of this state.

"In perhaps what may be termed the leading case of *People* v. *Dillwood,* 4 Cal. Unrep. 973 [39 Pac. 438], it appears that a witness for the prosecution 'admitted that he had "pleaded guilty to stealing the Johnson cow" and had been sent to the Whittier Reform School'. Thereupon he was asked if felony charges were not then pending against him and were not pending against him before he was sentenced to the reform school. In passing upon the admissibility of the questioned evidence, the Supreme Court said:

" ' . . . Before the enactment of section 2051 of the Code of Civil Procedure, the conviction of a felony could only be proved by the production of the record, if objections were made. That it may now be shown by the admission of the witness upon the stand is an exception to the general rule that the record, being the best evidence, must be produced. It is competent to show the fact that other criminal charges are pending in the same court against the witness at the time he testifies, not, however, as evidence of particular wrongful acts, for as to these he is presumed to be innocent, *but as a circumstance tending to show that his testimony is or may be influenced by a desire to seek the favor or leniency of the court and prosecuting officers by aiding in the conviction of the de-*

*fendant.* These charges should, however, be proved by the record if objection is made to oral evidence of them.'

"In the case of *People* v. *Bennett,* 79 Cal. App. 76, 94 [249 Pac. 20, 27], the defendant was charged with the crime of murder. Touching the question of the admissibility of evidence regarding the pendency of criminal charges against a witness testifying in the case on trial, the following appears in the opinion of the court:

" 'The next assignment under this head arose as follows: Against the prosecution's witness, Penning, there had previously been filed and were pending in the superior court of Butte county, at the time the instant case was called for trial, two criminal charges based, respectively, upon the sale and upon the possession of intoxicating liquor. Counsel for the defendant sought to bring out by the cross-examination of said witness that such charges were pending against him, and that one had been set for trial for a date some two weeks prior to the date fixed for the trial of the present case, but was postponed, on motion of the district attorney, to a date two weeks subsequent to the date fixed for the trial of the instant case. An objection by the district attorney to this proposed cross-examination was sustained by the court. The cross-examination, as the attorney explained, was designed to disclose a circumstance tending to show that the testimony of Penning for the People *was or might be influenced by a hope on his part that he would or might be leniently treated by the prosecuting officers in the criminal case or cases pending against him by giving testimony which would contribute to the conviction of the defendant.* We think the proposed inquiry involved a proper subject of cross-examination for the reasons stated by the Supreme Court, as follows, in *People* v. *Dillwood,* 4 Cal. Unrep. 974 [39 Pac. 438], and that the defendant would be entitled to prove the fact by the record if the witness denied it: "It is competent to show the fact that other criminal charges are pending in the same court against the witness at the time he testifies, not, however, as evidence of particular wrongful acts, for as to these he is presumed to be innocent, but as a circumstance tending to show that his testimony is or may be influenced by a desire to seek the favor or leniency of the court and prosecuting officers by aiding

in the conviction of the defendant.'' (Citing cases.) Such testimony goes to the question of the credibility of the witness. . . . '

"A similar situation was involved in the case of *People v. Blackwell*, 81 Cal. App. 418 [253 Pac. 964]. There the court said: ' . . . The fact that a criminal charge against the witness was then pending in the same court was competent evidence, not of the truth thereof, but as tending to show that the testimony of the witness *was influenced by a desire to gain the favor of the district attorney* by aiding in the conviction of the defendant and thereby escaping prosecution in her own case.' (Citing cases.)

"The principle is also recognized in the case of *People v. Hoffman*, 195 Cal. 295, 309 [232 Pac. 974]. However, it was there held not error to refuse to admit evidence to the effect that a felony charge was pending against the witness in a county in the same state other than that in which he was giving testimony; the reason assigned therefor being that the fact that he gave 'testimony for the prosecution' in one county could not have led him to expect favor or leniency from any official in the county in which the charge was pending against him. It is manifest that with reference to any possible 'leniency' to the witness, such a situation as was presented in the Hoffman case does not obtain in the instant case. On the trial of the action herein, in the course of the argument among respective counsel with reference to the admissibility of the question evidence, it was admitted by the prosecution in the absence of the jury that, although some time preceding the date of the trial of the instant case the witness had been placed under arrest by the Los Angeles police on suspicion of the commission by the witness of the crime of robbery, and although it was known to such police officers that several indictments were then pending against the witness in the state of Texas, regarding which some telegraphic correspondence had passed between the Texas officials and the police department of the city of Los Angeles shortly following the date of his arrest, the witness was released from custody and no 'fugitive' or other complaint was ever filed against him, as might have been done in accordance with the provisions of law thereunto applicable. It is clear that if extradition of the accused witness had

been sought or obtained by the Texas officials, many opportunities to extend 'favor or leniency' to the accused would have been possible at the hands of the district attorney of this county.

"But aside from what for convenience may be termed the assumed fact that, in exchange for favorable testimony by the witness someone in actual or presumed authority in the premises had either directly promised some sort of advantage to the witness, or had led or permitted him to expect or hope that he would be the recipient of unidentified or unspecified favors, or material advantages, from the district attorney, authorities are not lacking in the view that however ungrounded in fact, or even if the 'state of mind' of a witness be based upon pure delusion, nevertheless if such 'state of mind' amount to an expectation, or even a lingering or forlorn hope, that in the event that his testimony, far from being distinctly favorable to the prosecution, be evasive, or never so slightly strained or colored in favor of the prosecution, he will or may receive some favorable consideration from the district attorney, such fact may and should be disclosed to the jury through either the channel of cross-examination, or by means of the introduction of other evidence. Indicative of such assertion of the law is the following excerpt taken from the case of *People* v. *Thomson,* 92 Cal. 506, 509 [28 Pac. 589]:

" 'It is elementary law, supported by all authority, that the state of mind of a witness as to his bias or prejudice, his interests involved, his hostility or friendship toward the parties, are always proper matters for investigation, in order that truth may prevail and falsehood find its proper level. If the inner workings of a witness' mind are actuating his testimony, and the workings of that mind are brought forth to the light and held up in full view before the jury, results will be obtained much more in accord with truth and justice than though the witness' testimony is weighed and measured by his words alone. . . . '

"And in *Farkas* v. *United States,* 2 Fed. (2d) 644, it is said:

" 'The prosecuting witnesses, before the time of the trial, had pleaded guilty to an indictment in the federal court; the verdict of guilt or innocence in the instant case

depended primarily upon their credibility as against that of defendant who testified in denial of the demands and threats. As bearing upon their credibility, motive for false accusations, as well as bias, was vitally relevant, and testimony tending to show such motive was entirely competent. Concededly promises of immunity are admissible; they are, however, rarely made. Inasmuch as the question involved is the motive for testifying falsely and therefore the state of mind of the prosecuting witnesses, the relevant evidence is not alone the acts or attitude of the district attorney *but anything else that would throw light upon the prosecuting witnesses'. state of mind. It is therefore entirely proper, either by cross-examination of the witness himself, or otherwise, to show a belief or even only a hope on his part that he will secure immunity or a lighter sentence, or any other favorable treatment, in return for his testimony, and that, too, even if it be fully conceded that he had not the slightest basis from any act or word of the district attorney for such a belief or hope. The fact that despite a plea of guilty long since entered, the witness had not yet been sentenced, is proper evidence tending to show the existence of such hope or belief.'*

"See, also, *People* v. *Lee Ah Chuck,* 66 Cal. 662, 667 [6 Pac. 859], and authorities there cited; *People* v. *Homan,* 103 Cal. App. 161 [284 Pac. 252]; 27 Cal. Jur. 124, and cases there cited. It may also be noted that in volume 23 of American Digest (2d Dec. ed.), and in volume 28, Third Decennial Digest, under key numbers 363, 372 and 374 of the title of 'Witnesses', may be found references to many authorities which sustain the conclusion reached as to the question here under consideration.

 "Further complaint is made. by appellant in that the trial court refused to permit the introduction of evidence offered by defendant for the purpose of tending to show that on the date of the alleged attack herein the prosecutrix was not a virgin.

"It is the contention of appellant that because the effect of all the evidence introduced by the prosecution, and especially the testimony given by the prosecutrix, was that the offense was committed, not by consent of the victim of the alleged outrage, but by force and violence used and exerted upon her person, and because the prosecutrix per-

sonally testified in great detail concerning the circumstances which, according to her testimony, surrounded the commission of the crime, and which testimony, among other things, included the statement that the last thing she remembered was the 'pain' and that she 'fainted', in the face of such circumstances, defendant was entitled to introduce evidence which would tend to establish the fact that on the date of the commission of the alleged offense the prosecutrix was not a virgin; from which facts appellant further contends that the jury would have the right to infer that the prosecutrix neither 'fainted' nor suffered 'pain' in the course of the claimed assault upon her; but, to the contrary, that her entire story of the alleged occurrence was false, and consequently that no crime was committed by defendant; or, failing in that conclusion, that if a so-called 'statutory' rape of the person of the prosecutrix was committed by defendant on the date charged in the information, the act of defendant was had by consent of the prosecutrix; and which latter fact (in case the jury so found) became of great importance to defendant for the reason that by the provisions of section 264 of the Penal Code, in the event of a verdict of guilt of the defendant, the jury is charged with the duty of 'recommending' to the trial court the place wherein the defendant shall be imprisoned.

"Included within the corroboratory evidence which related to the commission of the offense of which defendant was accused was the testimony given by a policewoman who made statements concerning the physical appearance of the prosecutrix at a time supposedly within approximately one and one-half hours after the alleged crime had been committed. Among other things, she testified that on undressing the girl at that time, she noticed that there were spots on her dress and that as to 'the appearance of her private parts, . . . the skin showed red through the hair; the hair was moist and sticky'. A chemist testified that on four of the spots on the dress worn by the prosecutrix at the time when the alleged attack was made, he found 'male sperm, known as spermatozoon'.

"Although the trial court admitted the testimony of one physician produced by defendant to the effect that a physical examination of the prosecutrix made by him

within seventeen hours after the alleged attack had occurred disclosed the fact that the hymen of the prosecutrix was ruptured; that he found no 'abrasions or irritations of the vagina—irritable spots'; that he saw no 'signs of her (the prosecutrix) having had sexual intercourse during the preceding twenty-four hours'; that he found no 'recent tear of the hymen'; nor any 'tear of the perineum'—the trial court refused to permit that physician to answer either or any of the following questions which were propounded to him by counsel representing defendant, to-wit: 'Q. Was that a recent rupture or an old rupture? Q. Did you see any signs of any recent rupture? Q. Just describe the nature of the rupture you saw. Q. On the vagina, did you examine the vagina either before, in front of or anterior to the hymen or behind the hymen to discover whether or not there was any abrasions of any character? Q. Was there anything in your examination to indicate to you as a physician and surgeon whether or not that girl had had sexual intercourse with anybody 17 hours before or approximately 17 hours before you made your examination? Q. Are you able to tell whether a young girl of 17 years of age has been deflowered within 24 hours of a vaginal examination? Q. Describe this hymen that you discovered in this girl on the 10th day of August.'

"A second physician, who also had made a physical examination of prosecutrix testified that in so doing he had used both a speculum and 'two fingers'. Thereupon he was asked by counsel for defendant each of the following questions, none of which, by order of the trial court, was he permitted to answer, to-wit: 'Q. Was there any pain or discomfort (referring to the digital examination and instrumental examination)? Q. How large size a speculum did you use, medium or small? Q. Did you find any new or any old ruptures of any kind? Q. Did you find any old ruptures of any kind?'

"Similarly, by order of the trial court, a third physician, who likewise had made a physical examination of the prosecutrix, was not permitted to answer either of the following questions which were propounded to him by counsel for defendant: 'Q. Did you discover any conditions, scars or broken hymen or anything that had been broken

in your opinion within the last week preceding the examination? Q. Did you find any evidence that she had had intercourse within a month before? Q. Did you find any evidence that she had had intercourse before? Q. Did you find any old scars on the hymen? Q. Did you find any recent scars on the hymen? Q. What was the condition of the vagina?'

 ''The authorities in. this state appear to fairly establish the rule that on a charge of rape of a female person under the age of eighteen years, where the act is alleged to have been accomplished with the consent of the victim of the assault, evidence of previous acts of unchastity is inadmissible for the sole purpose of attacking her character. (*People* v. *Wilmot*, 139 Cal. 103 [72 Pac. 838]; *People* v. *Johnson*, 106 Cal. 289 [39 Pac. 622].) But equally well established is the principle that where the defendant is charged with the crime of· rape alleged to have been committed on the person of a woman over the age of eighteen years, accomplished by means of force or violence, it is error to exclude evidence which tends to show prior unchaste acts of the prosecutrix either with the defendant or with other men. (*People* v. *Shea*, 125 Cal. 151 [57 Pac. 885]; *People* v. *Benson*, 6 Cal. 221 [65 Am. Dec. 506]; *People* v. *Degnen*, 70 Cal. App. 567, 590 [234 Pac. 129]; *People* v. *Biescar*, 97 Cal. App. 205 [275 Pac. 851]. See, also, *Lusty* v. *State*, 97. Tex. Crim. Rep. 167 [261 S. W. 775]; *Weaver* v. *United States*, 299 Fed. 893, 55 App. D. C. 26; *Fields* v. *State*, 47 Ala. 603 [11 Am. Rep. 771].) The distinguishing principle between the two lines of authorities is that, as to a minor female child under the age of eighteen years, she· is legally incapable of giving her consent to the act; while as to a woman over the age of eighteen years no such legal restriction obtains; and as to the latter, the evidence is admissible, not for the direct purpose of impeaching her character, but for the purpose of descrediting her testimony relating to the use of force or violence of the defendant in accomplishing his purpose. As is said in *People* v. *Johnson*, 106 Cal. 289, 293, and repeated in *People* v. *Shea*, 125 Cal. 151, 152: 'This class of evidence is admissible for the purpose of tending to show the nonprobability of resistance upon the part of the prosecutrix. For it is certainly more probable

that a woman who has done these things voluntarily in the past would be much more likely to consent, than one whose past reputation was without blemish, and whose personal conduct could not truthfully be assailed. . . . '

"It is easily perceivable that if previous acts of unchastity on the part of a woman over the age of eighteen years tends to discredit her testimony to the effect that force was used by the defendant in the commission of the act, likewise would evidence of previous acts of unchastity by a girl under the age of eighteen years tend to discredit her testimony that in accomplishing his purpose the defendant exerted force and violence.

"But, as is indicated in the opinion rendered by the Supreme Court of this state in denying a petition for hearing in that court after judgment rendered by the District Court of Appeal in the case of *People* v. *Jones,* 76 Cal. App. 144, 157. [244 Pac. 101, 106], evidence of consent on the part of the victim of the assault, even though she be under the age of eighteen years, *if she claim that the act was committed by force and violence,* is admissible not only for the purpose of 'impeaching as to the manner in which the act was accomplished', but as well for the purpose of laying a foundation 'for impeachment as to whether the crime was committed at all'. In that case the defendant was convicted of the crime of rape of the person of his stepdaughter, of the age of fifteen years. On the trial of the action, by order. of the trial court, the defendant was precluded from ascertaining by cross-examination of the prosecutrix whether the act of which complaint was made was accomplished with her consent. On appeal, the District Court of Appeal upheld the ruling thereon made by the trial court. Thereafter, in ruling on a petition for hearing of the appeal by the Supreme Court, in part the latter court used the following language :

" 'As a matter of law, however, we would be constrained to hold as error the ruling of the trial court sustaining objections to the cross-examination of the prosecutrix as to whether she consented to the act of sexual intercourse or whether it was committed by fear or force and against her will. We can well understand if she claimed the act was committed by force how her claim might have laid the foundation, *not only for impeachment as to the manner*

*in which the act was accomplished,* but also under certain circumstances it might have laid foundation *for impeachment as to whether the crime was committed at all. . . .* As an abstract question of law, however, we cannot approve of the court's ruling in sustaining the objections to the questions asked as to whether she resisted the defendant's acts for the reason that the evidence sought to be elicited tended to disclose the circumstances of the crime and it could not properly be excluded on the theory that the prosecutrix, being under the statutory age, all inquiry as to the circumstances of the crime was therefore cut off. This evidence was not offered as a justification or excuse for the commission of the offense, but was offered as constituting a part of the crime charged. . . . ' See, also, *People* v. *Fultz,* 109 Cal. 258 [41 Pac. 1040].)

 ''In the instant case, the prosecutrix having testified to the effect that the alleged crime was accomplished by defendant by means of force and violence, this court is constrained to follow the suggestion made by the Supreme Court in the case last cited, in substance that evidence of consent on the part of the prosecutrix was admissible 'not only for impeachment as to the manner in which the act was accomplished, but also . . . for impeachment as to whether the crime was committed at all'. Although not conclusive evidence of unchastity, it is manifest that one of the items of evidence which would tend toward a conclusion that, prior to the date on which it was charged that defendant had committed the crime, the prosecutrix had been guilty of unchaste acts, would be that her hymen was ruptured, and that the scars, if any, were not of recent origin. But if with such and other evidence, which might possibly be introduced on the trial of the action, the jury should believe that preceding the alleged attack the prosecutrix was lacking in virtue, a conclusion that the testimony of the prosecutrix relating to the force and violence exerted by defendant was not to be believed, and consequently either that no crime was committed by defendant, or that if committed, the prosecutrix consented thereto, might readily result. ' . . . For it is certainly more probable that a woman who has done these things voluntarily in the past would be much more likely to consent, than one whose past reputation was without blemish; and whose

personal conduct could not truthfully be assailed.' (*People* v. *Johnson*, 106 Cal. 287, 293 [39 Pac. 622, 623]; *People* v. *Shea*, 125 Cal. 151, 152 [57 Pac. 885].)

"Assuming that the jury · should so far discredit the story of the alleged attack as narrated by the prosecutrix as to produce the conviction in the 'mind' of the jury that such testimony was wholly unworthy of belief, the acquittal of the defendant would naturally follow. █ On the other hand, if from the evidence in the case the jury should believe that under the provisions of the statute the person of the prosecutrix had been raped by defendant, but that the act was committed with the consent '(in fact, if not in law) of the prosecutrix, in view of the provision of section 264 of the Penal Code that the crime of rape of the character of that here under consideration is punishable 'either by imprisonment in the county jail for not more than one year, or in the state prison for not more than fifty years', and that 'the jury shall recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison', evidence of the former unchastity of the prosecutrix became and was of vital importance to the defendant for the purpose, if possible, of ameliorating the punishment which the jury might recommend that defendant be obliged to suffer, that is, primarily, whether in the state prison or in the county jail. Furthermore, it will be remembered that the prosecutrix testified that when the act was being committed by defendant the last thing she remembered was the 'pain' and that she 'fainted'. It is manifest that if evidence had been admitted which would have had a tendency to establish the fact not only that prior to the date of her alleged rape by defendant her hymen had been ruptured, but that theretofore she had been guilty of acts of unchastity, the question of whether on the occasion here under discussion she suffered any considerable pain, or that she fainted, would have demanded the careful consideration of the jury; and if the jury had disbelieved her statement as to the pain which she said she suffered, or that she fainted, under the provisions of subdivision 3 of section 2061 of the Code of Civil Procedure that 'a witness false in one part of his testimony is to be distrusted in others', the jury might have cast aside her entire story, or adopted that part of it,

if any, which from other evidence in the case it believed to be true, with a result or results similar to that hereinbefore indicated.

"Adverting to the combined testimony given by the policewoman and the chemist, who were introduced by the prosecution, to the effect that four certain spots found on the dress of the prosecutrix contained 'male sperm, known as spermatozoon', together with the further assumed fact, as later appears from the testimony of the same chemist, that such sperm came from the person of one about the age of defendant, it becomes plain that a third reason exists for the legal admission of the evidence proposed to be elicited by defendant with reference to the virginity of the prosecutrix. It should be apparent that defendant was not found or concluded by the whole or any part of such testimony. Nor should his negations or disavowals, if any, necessarily be limited to a personal general denial on his part either of the commission by him of the offense of which he was accused, or to a specific denial that the 'male sperm, known as spermatozoon', which assumedly were found on the dress of the prosecutrix, came from the defendant. In other words, defendant was entitled to combat and refute the effect of the evidence against him in any legitimate manner—either by direct or by circumstantial evidence—which, in its logical conclusion, either might or would imply either a direct contradiction of the damaging evidence, or amount to a denial thereof by way of inference. And so, if by establishing, if he could, that the ruptured hymen of the prosecutrix was not of recent origin; that the prosecutrix was not a virgin; and that circumstances existed in the comparatively recent life of the prosecutrix from which it legally might have been inferred that she had indulged in acts of unchastity with some person other than defendant—possibly the jury might have doubted that the questioned spots on the dress of the prosecutrix resulted from the alleged rape of the prosecutrix by defendant—which conclusion necessarily would have resulted in the destruction of an important link in the chain of circumstances tending to prove the guilt of defendant.

"It is also apparent that several of the questions to which reference hereinbefore has been had, which were

asked of the physicians who were called as witnesses by defendant, and which questions, by order of the trial court, were not permitted to be answered, were proper for the reason that on the answers thereto might have depended a conclusion by the jury as to whether any penetration in fact had resulted from the alleged attack by defendant on the prosecutrix. If, from the evidence, the jury had believed that no penetration took place, at most, defendant could have been convicted of no greater offense than attempt to commit rape.

"Several different specifications of error presented by appellant which are closely related to the question last hereinbefore given consideration by this court may be grouped together. They concern, first, the giving of several instructions which are to the effect that in trying issues of fact in the case, the jury should not be influenced by sympathy or pity for defendant; and that whether the victim of the alleged assault consent to the act, or resist the attack made upon her, is wholly immaterial; secondly, the question is presented whether, in the event of a verdict of guilty, for the purpose of enabling the jury to determine either the place where the defendant should be imprisoned, or, in effect, the extent of the punishment which he should suffer, the court erred in excluding evidence from which the jury would have had the right to infer that the act was not committed by or through the use of force and violence, but, to the contrary, was accomplished by and with the consent of the prosecutrix.

"In considering whether sympathy or pity of the jurors for defendant should be legally declared to have no part in a determination of the 'issues of fact', in order that a better understanding of the situation may be had, it becomes advisable to more clearly define what is meant by the expression 'issue of fact'. Having reference to legal practice, an issue of fact arises from an allegation of an ultimate fact made by one of the parties to the controversy which is denied by the other. Ordinarily, the only manner recognizable in a court of law for the determination of an issue of fact is by the introduction of evidence made acceptable by the statutes or by established legal practice. Nowhere, at least in civilized countries, is a solution of the ultimate facts or the 'issues of fact' upon

which a judgment may rest made dependable upon human emotions, or particularly upon the sympathy. or the pity for either of the litigants by any person who may be called upon to judicially decide the controversy. If such were the case, no necessity would exist for, nor convenience or social protection require, laws, rules or regulations of any sort. The more needy or distressed litigant, the more certain would be the assurance of a judgment in his favor; and the more affluent or powerful suitor would be an easy financial prey to his impecunious or afflicted legal antagonist. From a legal standpoint, it would appear plain that in performing the duty of determining the ultimate fact of either the guilt or the innocence of a defendant, the jury should be uninfluenced by, and unmindful of, either pity or sympathy.

''The relevancy of whether in the instant case the prosecutrix consented to the accomplishment of the act for which defendant herein went to trial in the lower court has hereinbefore received some attention. It is well settled that on the trial of a so-called 'statutory' rape case, ordinarily the consent of the prosecutrix is not in issue; but, as was decided by the Supreme Court in its order denying a hearing therein in the case of *People* v. *Jones,* 76 Cal. App. 144, 157 [244 Pac. 101, 106], where the prosecutrix, although under the age of eighteen years, testifies that the rape of her person was accomplished by force or violence exerted upon her by the defendant, evidence of consent becomes admissible not only for the purpose of 'impeaching as to the manner in which the act was accomplished', but also for the purpose of laying a foundation 'for impeachment as to whether the crime was committed at all'. It would follow that, at least as far as concerns 'impeachment' in those respects to which attention has been particularly directed, it is not true, as stated in the instruction, that whether the prosecutrix 'consented' to the accomplishment of the alleged act of which defendant was accused was 'wholly immaterial'; and at least to that extent, the instruction in question was erroneous and prejudicial.

''With reference to the point that, assuming a situation where, under the evidence relating strictly to whether the offense was committed by the defendant, the jury has unanimously agreed upon a verdict of 'guilty', the question

of whether thereafter, for the purpose of reaching a conclusion as to the place where the defendant shall be imprisoned, or, in effect, the extent of the punishment which shall be imposed upon him, the jury has the right to consider the circumstance which surrounded the commission of the act, remains for consideration.

██ ''On examination of the language of section 264 of the Penal Code, it will appear that a defendant who is convicted of the crime of rape is punishable either by imprisonment in the county jail, or by imprisonment in the state prison; that the term of imprisonment in each place is indeterminate, in that if it be in the county jail, it may be for any length of time not more than one year; and if in the state prison, it may be for any period of time not exceeding fifty years. Furthermore, that it becomes the duty of the jury to 'recommend' by its verdict whether the imprisonment shall be in the county jail or in the state prison.

''In considering the provisions of the statute, perhaps the first question which suggests itself is whether the 'recommendation' is in fact a part of the verdict of the jury and as such is binding on the trial court. In a rape case, as far as concerns the exercise of discretion by the jury in its determination as to the place of punishment of the defendant, it is · not unlike the 'discretion' which is likewise conferred upon the jury where a verdict of 'guilty in the first degree' has been reached in a murder case. Among other things, section 190 of the Penal Code provides that 'every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; . . . '

''On the trial of the action in the case of *People* v. *Hall*, 199 Cal. 451 [249 Pac. 859], the jury returned a verdict by which it found the defendant guilty of the crime of murder, but that it could not 'come to an unanimous agreement as to degree of punishment'. On appeal, it was held by the Supreme Court that, as returned, the verdict was incomplete; that necessarily a proper verdict in the premises should embrace *two constituent elements*, 'first, a finding that the accused is guilty of murder in the first degree; and, secondly, legal evidence that the jury has *fixed the penalty* in the exercise of its discretion'.

"In the case of *People* v. *Sachau*, 78 Cal. App. 702 [248 Pac. 960], in returning a verdict of "guilty' as against a defendant who was charged with the crime of rape, the jury failed to make any 'recommendation' as to the place where the defendant was to be imprisoned. Held, that the verdict was so defective as to constitute it a nullity and that a new trial should be granted. To the same effect, see *Weatherford* v. *State,* 43 Ala. 320.

"And in *People* v. *Pratt,* 67 Cal. App. 606 [228 Pac. 47], in which it appeared that the appeal was taken from a judgment which followed a conviction of the crime of rape, in commenting on the language employed in section 264 of the Penal Code, it was remarked that 'it will be observed that under this section *a minimum sentence may be imposed by the jury';* also, that the last amendment by the legislature of the statute 'emasculated' from the former statute 'the age of the female, leaving it discretionary with the jury to determine *by their verdict* whether in any case . . . an offense charged under subdivision 1 of section 261 *was a misdemeanor or a felony.*'

"That in a prosecution of a defendant for the commission by him of the crime of rape, the jury has power to 'recommend' the punishment which shall be inflicted, and that such 'recommendation' must be carried into execution, is decided in the case of *People* v. *Rambaud,* 78 Cal. App. 685 [248 Pac. 954].

"From the foregoing authorities it may safely be deduced that in a prosecution of a defendant on the charge of rape, in the event of a verdict of guilty, the 'recommendation' by the jury as to the place where defendant shall be imprisoned is an essential, inseparable part of the verdict and as such is conclusive and binding upon the trial court as far as the pronouncement by it of the ensuing judgment is concerned.

"As hereinbefore indicated, the provisions of section 190 of the Penal Code which deal particularly with the discretion of the jury in determining the penalty which shall be inflicted upon a person found guilty of murder in the first degree, are not unlike those terms of the statute here under consideration which provide that 'by their verdict' the jury shall recommend whether the punishment of a guilty defendant shall be by imprisonment in the

county jail or in the state prison. In that connection it becomes relevant to consider the view taken by the courts of appeal of this state where the question submitted has had to do with murder cases.

"In *People* v. *Atherton*, 51 Cal. 495, following a statement in substance that it is the duty of the jury to determine whether the defendant shall suffer the extreme penalty of the law, or imprisonment in the penitentiary, it is asserted in the opinion that in reaching a conclusion as to what penalty shall be inflicted the jury should be influenced by '*a consideration of the degree of atrocity* with which the particular murder has been attended'.

"The case of *People* v. *Hong Ah Duck*, 61 Cal. 387, among other questions, involved that of the admissibility of evidence of the fact that at the time the murder was committed the defendant was an inmate of the state prison where he was already serving a 'life sentence'. It was ruled that, in order that the jury might exercise the discretion vested in it by the statute 'in a wise and intelligent manner, the jury should be put in possession *of all the facts of the case*', which included the particular evidence in question.

"In the murder case of *People* v. *Perry*, 195 Cal. 623, 639 [234 Pac. 890, 897], in which was involved the question of the materiality of the assumed mental deficiency of a defendant on the punishment which, under the provisions of section 190 of the Penal Code, the jury was authorized to prescribe, among other things, the court said: ' . . . It is the jury's right and duty to consider and weigh *all the facts and circumstances attending the commission of the offense,* and from these and *such reasons as may appear to it upon a consideration of the whole situation,* determine whether or not in the exercise of its discretion, life imprisonment should be imposed rather than the infliction of the death penalty. . . . '

"However, in *People* v. *Troche*, 206 Cal. 35, 47 [273 Pac. 767, 772], the rule is declared to be that the insanity of a defendant cannot be used for the purpose of reducing his crime from murder in the first degree to murder in the second degree; and in *People* v. *Glosh*, 63 Cal. App. 609 [219 Pac. 456], evidence of sunstroke of the defendant, which rendered him subject to 'blinding fits of passion',

was held inadmissible for the purpose of enabling the jury to determine what punishment the defendant should be compelled to suffer for the commission by him of the crime of murder; it being substantially declared in each case that if the defendant was mentally responsible, he should suffer the same penalty which any sane person would be obliged to suffer, and, if mentally irresponsible, he should be acquitted. But in the Troche case the court repeated and affirmed the general rule that 'the only evidence admissible for the purpose of enabling the jury to determine whether the death penalty or life imprisonment should be imposed in the event the defendant should be found guilty of murder in the first degree was the evidence which the court did admit, and which concerned *"the circumstances connected with the offense"* . . . '

"In the case of *People* v. *Dice,* 120 Cal. 189, 202 [52 Pac. 477, 483], it appeared that in instructing the jury upon the two several degrees of murder, as well as upon the crime of manslaughter, the trial court stated to the jury the punishment which, upon a verdict of guilty as to either of such offenses, it would be the duty of the court to impose in pronouncing judgment. In commenting upon such practice, the Supreme Court said in part that 'to do so *is of course necessary* in instructing the jurymen upon their power and duty in the event that they should render a verdict of guilty of murder in the first degree. . . . '

"The only cases to which the attention of this court has been directed which in any manner militate against the rule that for the purpose of determining the extent of punishment which should be prescribed for a guilty defendant the jury should 'be put in possession of all the facts in the case', are those of *People* v. *Witt,* 170 Cal. 104 [148 Pac. 928, 930], and *People* v. *Clayberg,* 26 Cal. App. 614 [147 Pac. 997]. On examination of each of such cases it will be disclosed that the situation therein differs somewhat from that in the instant case, and that the principle of law therein announced may be distinguished from that announced in the authorities hereinbefore cited. On the trial of the action in the former case, in mitigation of any possible punishment for the commission of the offense, the defendant claimed the right to introduce evidence *relative to his character and habits.*

It was not contended by the defendant that the offered evidence was relevant or material on an issue of either the guilt of the defendant, or the degree of the crime, but that it was offered on the theory that it was competent because the jury had the right 'to assess the punishment'. The ruling was that: ' . . . We are of the opinion that our law does not contemplate any such independent inquiry on a trial for murder, and that the determination of the jury, under the provisions of section 190 of the Penal Code as to death or life imprisonment, *is necessarily to be based solely on such evidence as is admissible on the issues* made by the indictment or information and the plea of the defendant. . . . '

"In the instant case, the issues of the virginity of the prosecutrix, as well as of her consent to the act of which she complained, as hereinbefore has been declared, were particularly before the court by reason of the fact that the prosecutrix testified that the offense was committed by defendant by means of force and violence (*People* v. *Jones,* 76 Cal. App. 144, 157 [244 Pac. 101]); from which circumstance it would follow that the case of *People* v. *Witt,* 170 Cal. 104 [148 Pac. 928], far from being an authority ·against the rule by which the questioned evidence became admissible for the purpose of determining the punishment to be inflicted upon the defendant, is at least a negative statement of affirmance of the rule. In the case of *People* v. *Clayberg, supra,* which was a prosecution for 'statutory' rape, the decision related to an instruction requested by the defendant to be given to the jury, but which was refused by the trial court. With reference thereto the following excerpt from the opinion of the appellate court will disclose several objectionable features which appear upon the face of the requested instruction, and which alone should have justified its refusal by the trial court, to-wit: ' . . . Said instruction related to the power vested in juries by section 264 of the Penal Code (Stats. 1913, p. 212) in cases arising under subdivision 1 of section 261 of said code, to determine, practically, the nature and extent of the punishment which may be inflicted. By the terms of the former section it is incumbent upon the jury, where the prosecution is based upon subdivision 1

of section 261, to determine whether the defendant, if convicted, shall be punished by imprisonment in the county jail or the state prison. The rejected instruction explained the law as it is declared in those sections of the code and proceeded to declare that it was the duty of the jury to consider all the circumstances of the present case with a view to a just determination of which mode of punishment authorized by section 261 *"will best conserve the interest of society and the interest of the defendant"*, in the event that they found the defendant guilty. The instruction also had something to say about *the policy of the law being opposed to the infliction of 'unusual and severe punishment"*, etc., which statement could have no just place in the court's charge, it being argumentative in character. The instruction was properly refused. . . . ' However, after having decided that the defendant was not entitled to have the instruction, as offered, given to the jury, the appellate court made the following comment:

" ' . . . The court, in its charge, told the jury of the power and duty resting upon them by virtue of the provisions of section 264 of the Penal Code in the matter of designating the prison in which the defendant should be incarcerated in case of his conviction of the crime charged (the crime charged here being based upon subdivision 1 of section 261), and the jury, heeding that instruction, by their verdict, designated the state prison as the place of punishment. . . . '

"It will thus be noted that the opinion contains no limitation upon the principle announced in *People* v. *Hong Ah Duck*, 61 Cal. 387, to the effect that (syllabus) 'in order to exercise the discretion vested in them as to the penalty in a wise and intelligent manner, the jury should be put in possession of all the facts in the case. . . . '

"Upon further examination of the language of section 264 of the Penal Code, it will appear that it provides that if a defendant should plead guilty to the accusation, the punishment for the commission of the offense 'shall be in the discretion of the trial court'; similarly as the punishment therefore is vested in the jury where the defendant has been found guilty after trial by jury. It also may be remembered that under the provisions of section 7 of article I of the Constitution, 'a trial by jury be waived in all

criminal cases'. Assuming that a defendant charged with the crime of 'statutory' rape should either plead guilty, or that he should waive a jury, and after trial by the court without a jury, should be found 'guilty', it would seem unlikely that it would be seriously contended that for the purpose of determining the place where the defendant should be incarcerated, the trial judge would be powerless to inquire into 'the degree of atrocity with which the particular (rape) had been attended' (*People* v. *Atherton*, 51 Cal. 495), or that in order to exercise the discretion vested in the trial court 'in a wise intelligent manner the (trial court) should (not) be put in possession of all the facts in the case'. (*People* v. *Hong Ah Duck*, 61 Cal. 387.) If in a murder case, in determining the penalty which should be imposed for the commission of the crime 'the jury should be influenced by the degree of atrocity with which the particular murder has been attended', it is difficult to understand why in a rape case the same rule should not obtain; that is, why the jury in determining the place or extent of confinement should not be influenced by the degree of brutality, if any, which was exerted by defendant in the commission of the offense; or if there was no brutality, but, to the contrary, the 'rape' was accomplished either by the consent of the prosecutrix, or by her solicitation, or by her insistence, or by her procurement in any way, why the jury should not properly be influenced by such a circumstance. It is apparent that in order that the jury may determine the matter 'in a wise and intelligent manner', it should 'be put in possession of all the facts in the case'. (*People* v. *Hong Ah Duck*, 61 Cal. 387.) It is but reasonable that, if in the administration of justice it be desirable or essential that in determining the punishment which a defendant should suffer, the trial court should inquire into all the facts in the case, just so should the jury be likewise enlightened in order that its *quasi* judgment be just to the defendant. Neither the judge nor the jury, acting in his or its several judicial capacity, should be either required or expected to act blindly in the premises. No relevant light, however small or apparently insignificant, which might aid the tribunal or the judicial arm of the court in the conscientious discharge of its respective duty should be withheld or denied. To the con-

trary, everything relevant and material to the inquiry should be placed before the judge or the jury in order that the proper judicial discretion may be wisely, fairly and intelligently exercised. Because no exact words may be found in the particular statute by which such a power is conferred on the judge or the jury, does not constitute a barrier or a sufficient reason why a reasonable and humane view should not be taken of the intent of the legislature in enacting the statute. To say that with no knowledge of attendant circumstances the jury should be called upon to nominate the place, only, where the defendant should expiate his crime, would be not only unjust to the defendant, but would amount to the recognition of a principle in the administration of justice that would be founded upon pure conjecture.

''Even though in length of time a county jail sentence, following a conviction for the commission of a given crime, might be equal to or even exceed a sentence in the state prison rendered in pursuance of conviction of a like offense, as a matter of statutory provision the one would amount to a misdemeanor only, while the other would be a felony. (Sec. 17, Pen. Code.) . . . The record in the instant case discloses the fact that the evidence introduced by the prosecution tended to prove that the act of which defendant was accused was accomplished by means of force and violence. In the 'statutory' rape case of *Lusty* v. *State,* 97 Tex. Crim. Rep. 167 [261 S. W. 775], in the course of the opinion it is remarked that 'the proof of *force* tends to cause the jury to assess *a high penalty,* and when it is relied on by the state, *the accused should be permitted to combat by the evidence usual in force cases'.* . . . ''

On the petition for hearing it was urged by the respondent that the foregoing determination as to the right of the appellant to disclose the criminal proceedings pending against the witness Hale in the state of Texas for the purpose of showing the state of mind and motive of the witness in testifying as he did for the prosecution, is in conflict with the case of *People* v. *Hoffman,* 195 Cal. 295 [232 Pac. 974]. We do not so conclude. The Hoffman case was a criminal prosecution in the county of Imperial and it was sought to show that the witness Cornelison, testifying on behalf of the state, was influenced in favor of the

prosecution because of a criminal charge pending against him in the county of Orange and in the hope that he would be favored in so testifying by the authorities of Imperial County. It was held that the fact that the witness testified for the prosecution in Imperial County could not lead him to expect favor or leniency from any of the Orange County officials. The obvious reason behind the ruling was that the Orange County officials had no responsibility for, or duties to perform, or authority to exercise in connection with, the prosecution in Imperial County. In the present case the officials of Los Angeles County, including its peace officers and its district attorney, had certain duties to perform in connection with the detention, if necessary, of the witness Hale in the event extradition were demanded by the authorities in Texas as provided by sections 1548 to 1557 of the Penal Code. In fact communications had passed between the Los Angeles authorities and those of San Antonio, Texas, and the witness Hale was actually under surveillance. The situation here is therefore quite different from that disclosed in the Hoffman case.

From what has hereinbefore been stated with reference to the decision of this court in denying the petition for hearing in the case of *People* v. *Jones*, 76 Cal. App. 157 [244 Pac. 101], it should be understood that the prior unchastity of the prosecutrix may not be put in issue in a statutory rape case except when force and violence are claimed to have been used in the commission of the offense. The present holding is definitely confined to a case where such force and violence were claimed to have been used. Because of the great disparity between the punishments which may be meted out by the jury in rape cases under our present law and the abhorrence naturally entertained by jurors when force and violence are alleged or claimed to exist under the evidence, we think the sane, just and reasonable rule to apply is to permit the accused to combat the showing of force and violence by the evidence usual in force cases when the prosecution is under subdivision 3 of section 261 of the Penal Code. It may be said that the cases relied upon by the respondent expressing the view that in statutory rape cases the prior unchastity of the prosecutrix may not be shown are cases where no discretion was vested in the jury as to the extent of the punishment, and that

the cases in this state expressing the same view were decided before the amendment in 1923 of section 264 of the Penal Code vesting the jury with such discretion, or were cases where force and violence were not shown or claimed.

 While it is our conclusion that this judgment must be reversed, we feel bound to state that the instances of misconduct of the district attorney hereinbefore set forth would not, standing alone, necessarily require such a result. The other errors, however, were in our opinion vitally prejudicial, and considered together with the misconduct complained of, warrant the conclusion that the defendant was not lawfully convicted.

Numerous additional contentions by way of errors of law and misconduct of the jury are urged for reversal, but as the same or similar situations are not likely to occur on a retrial these points need not be further commented upon.

The judgment and the order denying the motion for a new trial are reversed and the cause remanded for a new trial. The appeal from the order denying the motion in arrest of judgment and the appeal from the order denying the defendant leave to file an application for probation are and each of them is dismissed.

Seawell, J., and Curtis, J., dissented.

WASTE, C. J., Concurring.—I concur in the judgment of reversal because of the intemperate atmosphere in which the case was tried. The prosecution no doubt labored under the stress of public opinion and excitement, at times confronted with considerable provocation; but the testimony of the prosecutrix is so improbable as to challenge one's credulity, and the jury should have been permitted to consider the evidence uninfluenced by the incidents and errors discussed in the main opinion. At the same time, I desire to emphasize the assertion in that portion of the opinion of this court which has been added to the opinion of the District Court of Appeal in which it is held that the instances of misconduct of the district attorney would not, standing alone, necessarily require a reversal. Any seeming conflict or inconsistency in the two parts of the decision should be resolved in favor of the declaration of this court on that question.